In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-1687

VENITA MILLER,

*Plaintiff-Appellant,*

*v.*

GREENLEAF ORTHOPEDIC
ASSOCIATES, S.C.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10-cv-5867 — **James B. Zagel**, *Judge.*

ARGUED SEPTEMBER 22, 2015 — DECIDED JUNE 27, 2016

Before FLAUM, WILLIAMS, and HAMILTON, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* A growth was discovered on
Venita Miller's pancreas and she was told that cancer could
not be ruled out without further testing. She told her supervi-
sor, Linda Miller. (From here, we'll use their first names to
avoid confusion.) One week later, Linda fired Venita. Venita

sued, claiming she was fired because Linda thought she had a disability. A jury disagreed. Venita asks this court to order a new trial, arguing the trial judge abused his discretion by excluding important evidence, and that abuse of discretion prejudiced Venita at trial. We find that, for the most part, the judge did not abuse his discretion. In one instance, the judge may have erred, but he corrected his mistake and Venita has not shown she was prejudiced. So we affirm the judgment.

## I. BACKGROUND

Venita worked as a receptionist for Greenleaf Orthopaedic, and Linda was her supervisor. The relevant events took place in the autumn of 2009. On Wednesday, September 9, Venita woke up in pain. She called in sick to work and went to the emergency room, where she learned that she had a growth on her pancreas and further testing was needed to determine whether she had pancreatic cancer. The next day, she gave Linda the news. Because Venita did not have health insurance and needed money for the testing and other medical care, she asked if she could forgo taking a vacation and receive extra pay instead. Linda agreed.

As Linda knew, Venita was scheduled to serve two weeks of jury duty, starting the following Monday. But on Monday, Venita again woke up in pain, and called in sick to jury duty. For the rest of the week, she went neither to court nor work. On Friday, she was fired.

Venita sued under the Americans with Disabilities Act, alleging Greenleaf fired her because it thought she had a disability. The trial was a credibility contest: Greenleaf's story was that Venita pretended she was at jury duty, instead of home sick, so that she would get paid for the week (she had already

used all of her paid sick days for the year). Linda testified in support of that story. She said she thought Venita was at jury duty all week, until on Friday another employee reported seeing Venita around town. At that point, Greenleaf called the court and learned that Venita had not been there all week, and Linda fired her for having skipped work without notice. Venita called Linda a liar, testifying that she had told Linda she was too sick to go to court or to work, and Linda had given her the week off.[1]

Venita kept a personal diary, which contained entries that could arguably have helped the jury decide who was telling the truth. Specifically, entries from Monday, September 14, and Tuesday, September 15, purport to document voicemail messages and phone conversations between Venita and Linda. Venita sought to introduce these diary entries at trial, but the judge excluded the entry from the 14th and only admitted the entry from the 15th during Venita's rebuttal case and through oral testimony (Venita read the entry aloud but was not allowed to show it to the jury). On appeal, Venita challenges these decisions. She also challenges the judge's rulings concerning her multiple attempts to impeach Linda's trial testimony about the messages and conversations.

---

[1] Greenleaf told the jury that it fired Venita for a host of other reasons too. Still, if the trial judge abused his discretion in excluding evidence that would likely have helped the jury decide who was telling the truth about Venita's week-long absence, the error would not be harmless because Greenleaf's theory was that that week was "the straw that broke the camel's back."

## II. ANALYSIS

We review a trial judge's evidentiary rulings for an abuse of discretion and will not order a new trial if any errors, cumulatively, were harmless. *Nelson v. City of Chicago*, 810 F.3d 1061, 1066 (7th Cir. 2016).

### A. No Abuse of Discretion in Barring Repetitive Impeachment

At her deposition, Linda testified that she assumed Venita attended jury duty all week. She made that assumption because she knew jury duty had been scheduled and Venita never said she would not attend. Venita's lawyer suggested that Venita informed Linda on Monday that she called in sick to jury duty. Linda rejected that suggestion, testifying that she did not think she spoke to or received a voicemail from Venita at any time during the entire week, and that if the two did speak, it was only about paying Venita for her vacation time.

Linda's trial testimony was different. When called during Venita's case-in-chief, Linda testified that: (i) she remembered receiving a voicemail, on Monday morning, in which Venita said she would be at jury duty that day; and (ii) she remembered having a phone call with Venita, on Monday afternoon, in which Venita said she was at jury duty. So Linda's deposition testimony was that she *assumed* Venita was at jury duty, while her trial testimony was that Venita specifically said that was so. Venita's lawyer used Linda's deposition testimony to impeach her, pointing out the change in her story.

Linda was called again during Greenleaf's case-in-chief. On direct examination, she reiterated that until she learned otherwise on Friday, she thought Venita had been at jury duty all week. But she was not asked *why* she thought that, nor was

she asked specifically about Monday's voicemail or phone conversation. Nonetheless, on cross-examination, Venita's lawyer attempted to impeach Linda a second time concerning her changing testimony about Monday's communications. Greenleaf objected that the topic was beyond the scope of its direct examination. The judge sustained that objection and also noted that Venita's lawyer was "going over old ground."

Then, during Venita's rebuttal case, her lawyer gave it another shot, asking to recall Linda to impeach her again. Revisiting his ruling from Greenleaf's case-in-chief, the judge noted that even if the topic was not entirely beyond the scope of Greenleaf's direct examination, Venita's lawyer had already thoroughly addressed the issue, during Venita's case-in-chief. So the judge denied Venita's request, rejecting what he called an attempt "to bang away at a witness who has already been adequately impeached."

Having reviewed the trial transcript, it is clear to us that during Venita's case-in-chief, her lawyer fully explored the changes in Linda's testimony from deposition to trial. Under the applicable deferential standard, *see United States v. Bozovich*, 782 F.3d 814, 816 (7th Cir. 2015), we have no trouble holding that the trial judge was within his discretion to reject a do-over. *See* Fed. R. Evid. 611(a) (directing trial judges to "exercise reasonable control over the mode and order of examining witnesses" to, among other things, "avoid wasting time" and "protect witnesses from harassment").

## B. Rulings on Diary Entries Do Not Warrant New Trial

Before trial, Venita moved the court to allow her to introduce entries from her diary at trial. That motion was denied without prejudice and she renewed it twice during trial. The

entry from Monday was never admitted. The entry from Tuesday was eventually admitted, but only during Venita's rebuttal case, and only orally—she read it aloud but was not allowed to show it to the jury. Venita argues that the judge abused his discretion in excluding Monday's entry and in limiting the presentation of Tuesday's entry.

Monday's entry reads as follows:[2]

> Called in sick today work & jury duty. Thank you God for letting jury duty understand & believe me. Who in the world would fake a sickness like this. Spoke w/ Dan he said call [illegible] & fax over my ER papers & Doctor note. Thank you Lord! I will not be in contempt of court.
>
> Left a msg for Linda to call back.
>
> Called Linda said she got my msg. I reminded her I had JD this week. She said our Doc's wouldn't write an excuse for me. Hopefully my ER papers will be enough.
>
> * Call St. Therese for records. *
>
> Thank you Dear Lord.
>
> [Illegible]

Tuesday's entry reads:

> Called in sick today asked Linda if Dwight could p/u my check instead of mom. She said OK will leave at the front desk. Also OK to have

---

[2] The diary is handwritten. For completeness and accuracy, images of the relevant pages are included in the appendix to this opinion.

> a few days off. I told her where I'd be for cover-
> age. She said that's fine. Thank you Lord. God is
> Good all the time!
>
> [Illegible]
>
> Called JD & told them I can't get a Doc excuse
> until I f/u w/ my Doc but will still fax ER stuff.
> OK per Dan.
>
> Called St. Therese — Reg Records I have to req
> in person & pay a fee.

Venita first argues that these entries were admissible as "present sense impressions" under Federal Rule of Evidence 803(1). We easily reject that argument because Venita offered no evidence that the entries describe the relevant events without calculated narration, nor that they were made while she was perceiving the events or immediately thereafter. *See United States v. Boyce*, 742 F.3d 792, 797 (7th Cir. 2014).

Her second argument, however, merits greater discussion. She contends that Greenleaf suggested her story—that Linda gave her the week off—was a lie, fabricated to help her win this lawsuit. She argues that her diary entries are admissible to rebut that allegation, as they were created before the lawsuit was filed—indeed, before she was fired—when she had no motivation to lie. "Prior consistent statements that are offered to rebut a charge of recent fabrication or improper influence or motive are not hearsay." *United States v. Alviar*, 573 F.3d 526, 541 (7th Cir. 2009) (citing Fed. R. Evid. 801(d)(1)(B); *Tome v. United States*, 513 U.S. 150, 157–58 (1995)). "Such statements are admissible if they satisfy a four-part test: (1) the declarant testifies at trial and is subject to cross-examination; (2)

[her] prior statement is indeed consistent with [her] trial testimony; (3) the statement is offered to rebut an explicit or implicit accusation of recent fabrication; and (4) the statement was made before the declarant had a motive to fabricate." *Alviar*, 573 F.3d at 541. A prior statement does not fall within Rule 801(d)(1)(B), even if it is consistent with the witness's in-court testimony, unless it has some potential to rebut the alleged link between the in-court testimony and the witness's recent improper motive. *Tome*, 513 U.S. at 157–58 ("[T]he question is whether A.T.'s out-of-court statements rebutted the alleged link between her desire to be with her mother and her testimony, not whether they suggested that A.T's in-court testimony was true. The Rule speaks of a party rebutting an alleged motive, not bolstering the veracity of the story told.").

When a central witness's in-court testimony is attacked as a recent fabrication, the precise contours of the attack may be unclear. Rarely will the attack apply to the *entirety* of the witness's testimony. So determining whether a witness's past statement has any potential to rebut the allegation will necessarily involve an exercise of the trial judge's discretion. Here, Venita and Linda testified differently on both (1) whether Linda knew Venita missed jury duty on Monday; and (2) whether Linda knew Venita would miss both jury duty and work for the rest of the week. The judge found that the key dispute in the case concerned the rest of the week, not solely or primarily Monday. There is some merit to that framing. Venita's lawyer tried to get Linda to say that she fired Venita for lying about her whereabouts on Monday, but Linda resisted that characterization, saying that Venita's infraction was failing to tell Greenleaf where she was all week. Twice during closing arguments, Venita's lawyer stated that "the

key conversation" was the one Venita said happened on *Tuesday*, not Monday. Whether we would have reached the same conclusion is irrelevant—an exercise of discretion was required and we cannot say that the trial judge abused that discretion. *See United States v. Abel*, 469 U.S. 45, 54 (1984) (noting that a "district court is accorded a wide discretion in … [a]ssessing the probative value of [proffered evidence], and weighing any factors counseling against admissibility").

Venita's diary entry for Monday says that Venita reminded Linda that she had jury duty all week, Linda refused to get Greenleaf's doctors to write a note excusing Venita from jury duty, and Venita was "hopeful[]" that the documents she already had would suffice. The judge found the entry silent on the key question: whether Venita told Linda that she would not be attending jury duty for the rest of the week. That silence is not surprising—Venita testified that it was not until *Tuesday* that she spoke with the jury department and was "excused for the rest of the week." The judge's finding is supported, so excluding Monday's entry was not an abuse of discretion.

Tuesday's entry, on the other hand, is *not* silent on the key question. That entry says that Venita and Linda spoke on Tuesday and that Linda gave Venita "a few days off." That's consistent with Venita's version of the facts and relevant to the material dispute. (Linda testified that she didn't give Venita any days off—indeed, the two did not speak on Tuesday). The trial judge appears to have agreed. Although he initially excluded the entry, he later revisited and reversed that ruling, so the entry was admitted at trial. Nevertheless, Venita argues that the judge's handling of the entry prejudiced her, for several reasons.

First, Venita complains that because the judge initially excluded the entry, she was only able to present it during her rebuttal case, not her case-in-chief. But we cannot order a new trial based on an error that does not affect a party's "substantial rights," *Nelson*, 810 F.3d at 1066; Fed. R. Civ. P. 61, and Venita has not shown that her substantial rights were affected by the order of the presentation.

Second, Venita complains that, although she was allowed to *read* the entry, she was not allowed to *display* it. But the trial judge noted that there was no benefit to displaying the entry because Greenleaf was not suggesting that Venita read it aloud incorrectly. Venita's lawyer contended that Greenleaf was suggesting that the entry was fraudulent—it was actually created after Venita was fired. But as the judge noted, displaying the entry would in no way help the jury determine when it was written. On appeal, Venita offers no substantive response to that point, nor does she otherwise explain how her substantial rights were affected by the judge's decision.

Finally, Venita argues that she was harmed by the judge's decision to admit Tuesday's entry while at the same time excluding Monday's. She argues that because the jurors learned that a diary existed, but did not see (or hear) an entry from Monday, they likely inferred that no entry was made that day. Venita does not explain how that inference would have been detrimental to her, but even assuming the inference was made and it was detrimental, the argument is a loser. First, the argument fails because we have already concluded that the judge did not abuse his discretion in excluding Monday's entry. Further, Venita was not barred from introducing the fact that a diary entry from Monday existed; the bar went only to

the entry's content. Finally, any error was invited. Venita's renewed motion explicitly asked only to admit Tuesday's entry, not Monday's. *See United States v. Addison*, 803 F.3d 916, 919 (7th Cir. 2015) ("It is well-settled that where error is invited, not even plain error permits reversal.").

In sum, the trial judge did not abuse his discretion in preventing multiple impeachment attempts on the same topic, nor in excluding Monday's diary entry. And Venita has not shown that she was harmed by the limitations placed on her presentation of her diary entry from Tuesday.

### III. CONCLUSION

We AFFIRM the district court's judgment.

**APPENDIX**

**September 14, 2009**

Date 9-14-09

called in sick today work & jury duty. Thank you God for letting jury duty understand & believe me. who in the world would fake a sickness like this Spoke ⁻ Jan he said call C/S & fax over my ER papers & juror note Thank you Lord! I will not be in contempt of court.

Date

left a msg for Linda to call back

called Linda said she got my msg, & reminded her ⁻ had J.) this week she and our Sup's wouldn't write an excuse for me. Hopefully my ER papers will be enough

Thank you Dear L.)

**September 15, 2009**

Date 9.15.09

Called in sick today. asked Linda if Dwight could pick my check instead of mom. She said OK will leave at the front desk. Also OK to have a few days off. I told her where we'd be for coverage she said thats fine. Thank you Lord. God is Good All the time!

Lou Nitt

Date

Called I.J + told them I cant get a Doc excuse until I f/u E my Doc but will still fax EE stuff OK pm 3AM.

Called St. Theresa - Reg Records I have to reg in person I pay a fee.