In the

# United States Court of Appeals

## For the Seventh Circuit

───────────────

No. 18-1479

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MICHAEL BONIN,

*Defendant-Appellant*.

───────────────

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 cr 22-1 — **Robert W. Gettleman**, *Judge*.

───────────────

ARGUED FEBRUARY 7, 2019 — DECIDED JULY 26, 2019

───────────────

Before BAUER, HAMILTON, and BRENNAN, *Circuit Judges*.

BRENNAN, *Circuit Judge*. Justice Holmes introduced a mainstay of First Amendment jurisprudence when he wrote: "The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic." *Schenck v. United States*, 249 U.S. 47, 52 (1919). A century later, Michael Bonin brings us back to a theater to examine the limits of protected speech.

After fellow moviegoers asked Bonin to stop talking on his phone during a film, Bonin scolded the audience, said he was a U.S. Marshal speaking with "the government," flashed a gun on his belt, and threatened "anyone [who] had a problem with it, they could take it out in the hall." Panicked patrons called 911 and theater security in response. Everyone now knows Bonin is not a U.S. Marshal, but when police arrived, Bonin convinced them too that he was, and they allowed him to reenter the theater. Such a second chance usually preludes a character arc, but not in this story. As Bonin walked to his seat, he raised his arms, again exposed his gun, and bellowed, "See, I told you I'm a U.S. Marshal." Moments later, police returned and removed him from the theater.

Bonin's ruse resulted in an indictment under 18 U.S.C. § 912. That statute makes it a crime to impersonate an officer or employee of the United States. A jury found Bonin guilty. He now claims § 912 is an unconstitutional restriction on free speech and challenges multiple evidentiary rulings and jury instructions. Because none of his claims offer any reason to reverse the jury verdict, we affirm.

**I**

The events described above occurred in 2014 at the AMC River East theater in Chicago.[1] Brian Reidy, an off-duty Chicago police officer moonlighting as theater security, responded first and asked Bonin to step out into the hallway. Reidy observed that Bonin openly wore a gold badge and gun on his belt. When Reidy asked Bonin about his employment, Bonin again falsely claimed to be a U.S. Marshal. Bonin also

---

[1] We recount the facts in the light reasonably most favorable to the jury's verdict. *Murphy v. Smith*, 844 F.3d 653, 655 (7th Cir. 2016).

told Reidy this was his "first night off" after "working many months."

Minutes later, Chicago police officer Brenda Guillory arrived in response to a 911 call about a person in a theater causing a disturbance with a gun. Two more police officers responded as backup. As Guillory approached Bonin, she saw that he wore a "full duty belt" typically worn by law enforcement with a gun, magazine, and badge on it. Guillory's concerns were "relaxed," however, after Bonin told her that he was a U.S. Marshal. Bonin also gave Guillory his driver's license and photo identification classifying him as a "U.S. Fugitive Enforcement Agent" for the "U.S. Fugitive Enforcement Bureau." The identification card also contained a "star" logo with the words "U.S. Investigations." Similarly, Bonin's gold badge read, "U.S. Fugitive Enforcement Bureau," with the Seal of the United States and "The United States of America" imprinted in the center.

Guillory ran a check on Bonin's driver's license, which revealed no outstanding warrants and Bonin's valid concealed carry license. The exchange between Guillory and Bonin lasted about ten to fifteen minutes. Because police and theater security believed Bonin was a U.S. Marshal, they allowed him back into the movie and asked him to keep quiet for the rest of the night.

Bonin immediately ignored the instruction. As he reentered the theater, he raised his arms above his head, displayed his gun, and blustered, "See, I told you I'm a U.S. Marshal." One moviegoer ran out of the theater and told Reidy that Bonin returned boasting, "I'm a U.S. [expletive] Marshal, and there's nothing you can do about it." Another patron, Patrick

Alfich, sent a series of text messages to a friend in which he stated:

> [J]ust got out of the movie w[h]ere drunk US marshal with a gun threatened the audience … [.] Everyone started yelling when he took a phone call during the movie[.] … Then the police let him back into the theater because he's a US marshal … [H]e had his gun on him and his belt loop[.] … [S]aid he's a US marshal and the government was calling him and everyone can go [expletive] themselves and that they had an issue that he was going to take it out into the hallway[.]

Police, who had yet to leave the scene, escorted Bonin out. As Bonin exited, he walked with a limp and explained to Guillory that he injured his leg executing a search warrant; another lie, as Bonin actually injured his leg in a motorcycle accident. At that point, Guillory offered Bonin a ride home "as a courtesy" because she still believed he was a law enforcement officer. Bonin declined Guillory's offer.

In response to Bonin's ruckus, the theater gave customers free movie passes and advised them to contact the U.S. Marshals Service if they wished to complain. Alfich did just that. Six weeks later, Bonin was charged with false impersonation of a U.S. Marshal in violation of 18 U.S.C. § 912.

A federal grand jury indicted Bonin for twice falsely impersonating a U.S. Marshal: once in 2013 in Markham, Illinois

(Count One),[2] and the 2014 incident described above (Count Two). At the government's request, the district court dismissed Count One of the indictment in January 2017.

One month later—while awaiting trial on the movie theater charge—Bonin took his show on the road. Police observed a car driving in Beecher, Illinois, with flashing red and white emergency lights activated. As the car approached, the police pulled over to allow it to pass, believing it was an emergency vehicle. But when the vehicle sped by police realized it was not a paramedic or patrol car as they expected, but a Ford Bronco adorned with a large "AGENT" decal on the windshield and law enforcement insignia on the sides. Bonin was the driver. After that, a grand jury returned a two-count superseding indictment charging Bonin with § 912 violations for the AMC theater incident (Count One) and this new act of false impersonation while driving. At Bonin's request, the district court severed the two counts and ordered trial to proceed on the theater charge.

Bonin raised numerous pretrial challenges to the government's movie theater charge. Initially he moved to dismiss the indictment, pointing to *United States v. Alvarez*, 567 U.S. 709

---

[2] Count One alleged an off-duty Markham police officer observed Bonin drive through a red light with red and blue emergency lights activated. When the officer asked Bonin about the emergency lights, Bonin responded he was a U.S. Marshal and opened his trench coat to reveal a gun holstered at his waist. The officer reported Bonin as a suspicious person to on-duty Markham police, who issued traffic tickets to Bonin for running the red light and improperly using emergency lights. After this incident, U.S. Marshals met with Bonin and cautioned that pretending to be a U.S. Marshal was illegal and could lead to Bonin unintentionally placing himself in harm's way. At the end of this meeting, Bonin voluntarily surrendered two fake U.S. Marshal badges.

(2012) (plurality opinion), which held speech restrictions imposed by the Stolen Valor Act of 2005 violated the First Amendment. Bonin claims the logic of *Alvarez* renders § 912 unconstitutional by extension.[3] The district court denied Bonin's motion because his "arguments rely on an over-exaggerated interpretation of *Alvarez*," in which the Supreme Court's plurality, concurring, and dissenting opinions discuss § 912 in dicta as an example of a constitutional statute. The court concluded that no part of the plurality's opinion in *Alvarez* made § 912 "somehow vulnerable" to Bonin's arguments.

The district court also refused to give several of Bonin's proposed jury instructions. On the elements of the offense, Bonin proposed instructions that explained a § 912 violation requires: (1) a false assertion of authority; (2) an intent to defraud or a "knowing" violation; and (3) evidence that the false pretense of federal authority caused others to change their behavior in some way. Bonin also requested an instruction requiring unanimity on which alleged false representation violated the law, as well as an instruction informing that the First Amendment protects freedom of expression.

On the elements, the district court found that Bonin's proposed instruction focused on the incorrect § 912 offense.[4] It

---

[3] The Stolen Valor Act of 2005, 18 U.S.C. 704(b), made it a crime to falsely claim to be an award recipient of any military decorations or medals.

[4] Section 912 prohibits: (1) false impersonation of a federal official coupled with an overt act in conformity with the pretense (the "acts-as-such clause"); and (2) false impersonation of a federal official coupled with demanding or obtaining a thing of value (the "demands clause"). *United States v. Lepowitch*, 318 U.S. 702, 704–05 (1943); *see also United States v.*

rejected Bonin's proposal and instructed the jury that, to convict, it would need to find that Bonin: (1) "falsely assumed or pretended to have been an officer or employee acting under authority of the United States Marshals Service"; and (2) "acted as such." The district court's instructions further stated that "[w]ith respect to acting 'as such,' the government must prove that [Bonin] acted in a manner consistent with his pretended authority as an officer or employee of the United States." With respect to Bonin's proposed unanimity and First Amendment instructions, the court concluded they were inconsistent with the facts and law at issue in the case.

Bonin also moved to suppress his statements to Reidy and Guillory on two theories: that his removal from the theater constituted an unlawful seizure, and that the officer failed to read him *Miranda* warnings. The district court denied Bonin's suppression motion, finding Bonin's encounter with police was consensual, and ruling police had reasonable suspicion to question Bonin based on reports that a person with a gun was causing a disturbance in the theater.

At trial, the jury heard from Reidy, Guillory, and Alfich, each of whom testified that Bonin held himself out to be a U.S. Marshal. Alfich also testified about Bonin's threats and his berating of the movie audience. The government also presented testimony from deputy U.S. Marshal Michael Woods-Hawkins who explained the basic duties of the position, including fugitive recovery and the accessories of a U.S. Marshal, such as wearing a weapon and badge on the belt.

---

*Rippee*, 961 F.2d 677, 678–79 (7th Cir. 1992). Bonin's proposal involved the demands clause, but he was charged under the acts-as-such clause.

Bonin testified on his own behalf. On direct examination, he contradicted the testimony of Reidy, Guillory, and Alfich, denying that he raised his voice at the movie audience or pretended to be a U.S. Marshal. He also testified the badge he wore at the theater and the identification card he presented to Guillory were given to him by the entity that "employed" him as a bounty hunter. The gold badge bore the words "U.S. Fugitive Enforcement Bureau" with the Seal of the United States and the words "The United States of America" in the center of the badge. The ID card contained the title "U.S. Fugitive Enforcement Bureau," and termed Bonin as a "Fugitive Recovery Agent."

On cross-examination, Bonin again testified that he never cursed at the audience, never said he was a U.S. Marshal, nor tried to trick anyone into thinking he was a U.S. Marshal at any time in his life, including the night at the theater. To rebut this testimony, the government showed Bonin an assortment of badges and other items seized from his home that contained the words "Fugitive Recovery Agent," "U.S.," or "United States." The items also applied semblances of the Seal of the United States. Bonin admitted he purchased these items for himself. One of these items, a knit cap with federal insignia, included the motto of the United States Marshals Service. He also acknowledged he put a gold magnet on his vehicle bearing an image of a star badge with the words "Fugitive Recovery Agent" encircling the Seal of the United States.

The government also asked Bonin about pictures he posted on his public Facebook page. These included a picture of Bonin wearing a uniform with a badge, and another picture of his car with the decals "U.S. Detective" and "CAUTION K-9." Bonin admitted placing those indicators on his vehicle,

but he denied doing so to make people think he was a federal law enforcement officer.

Because Bonin's testimony called into question the veracity of Alfich's prior testimony, the government re-called Alfich. Before trial, the district court had excluded Alfich's text messages. But after Bonin denied Alfich's account of Bonin's actions during the movie, the court allowed the government to introduce Alfich's texts as prior consistent statements.

After a three-day trial, the jury returned a guilty verdict. Bonin moved for judgment of acquittal and a new trial, but the district court denied his motions. At sentencing he was placed on three years' probation.

## II

On appeal Bonin submits a horde of legal challenges.[5] Three predominate: a challenge to § 912 under the First Amendment, objections to the jury instructions, and evidentiary disputes.

## A

The Constitution mandates that "Congress shall make no law ... abridging the freedom of speech." U.S. CONST. amend. I. Bonin claims § 912 imperils that freedom. We review this

---

[5] We have explained "one of the most important parts of appellate advocacy is the selection of the proper claims to urge on appeal." *Howard v. Gramley*, 225 F.3d 784, 791 (7th Cir. 2000). The kitchen-sink approach Bonin embraces can be criticized as "consum[ing] space that should be devoted to developing the arguments with some promise." *Id*.

constitutional question de novo. *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 476 (7th Cir. 2012).

Section 912 provides:

> Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and *acts as such*, or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined under this title or imprisoned not more than three years, or both.

(emphasis added).

Bonin was charged under the "acts as such" clause of § 912, which criminalizes "false impersonation of a federal official coupled with an overt act in conformity with the pretense." *United States v. Rippee*, 961 F.2d 677, 678 (7th Cir. 1992). He mounts a facial challenge to this clause, advancing three arguments. First, he claims the Supreme Court facially invalidated it in *United States v. Alvarez*, 567 U.S. 709 (2012). Next, he invokes the overbreadth doctrine, arguing the acts-as-such clause reaches a "substantial amount" of constitutionally protected conduct. Last, he argues it is unconstitutionally vague. We begin our analysis with Bonin's broader facial attack before turning to the doctrines of overbreadth and vagueness.

Bonin confronts a "heavy burden" in raising a facial constitutional challenge to § 912. *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998). The Supreme Court has repeatedly stated that facial invalidation of legislation is disfavored. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008); *Nat'l Endowment for the Arts*, 524 U.S. at 580

(noting facial invalidation "has been employed by the Court sparingly and only as a last resort"); *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 223 (1990) ("[F]acial challenges to legislation are generally disfavored."). To prevail on a facial attack, Bonin must establish "that no set of circumstances exists" in which § 912 would be valid or that it "lacks any plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472 (2010) (internal quotations and citations omitted).

Bonin offers no such arguments, nor could he under *Alvarez*. There, a plurality of the Court described § 912 as a "permissible" restriction on false speech because it "protect[s] the integrity of Government processes" and "is itself confined to 'maintain[ing] the general good repute and dignity of … government … service itself.'" 567 U.S. at 720–21 (plurality opinion) (quoting *United States v. Lepowitch*, 318 U.S. 702, 704 (1943)). Likewise, Justice Breyer's concurring opinion and Justice Alito's dissent discussed § 912 as a constitutional restriction on speech. *Id*. at 735 (Breyer, J., concurring in the judgment); *id*. at 748 (Alito, J., dissenting). Despite the splintered decision, no Justice in *Alvarez* questioned the constitutionality of § 912.[6]

---

[6] Bonin argues *Alvarez* "confirms that … Section 912 is facially unconstitutional." Each of the opinions in *Alvarez* said just the opposite. The Court explained that § 912, along with other statutes that "implicate fraud or speech integral to criminal conduct," are "inapplicable" to the reasoning of its holding. *Alvarez*, 567 U.S. at 721 (plurality opinion); *see also id.* at 734–35 (Breyer, J., concurring in the judgment) (distinguishing § 912 from the Stolen Valor Act because of its "focus on *acts* of impersonation" (emphasis in original)); *id*. at 748–49 (Alito, J., dissenting) (describing § 912 violations as "false statements of fact [that] merit no First Amendment protection in their own right").

The *Alvarez* plurality applied "most exacting scrutiny" in striking down the Stolen Valor Act. *Id.* at 724 (plurality opinion) (quoting *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 642 (1994)). The concurring opinion applied intermediate scrutiny. *Id.* at 731 (Breyer, J., concurring in the judgment). We will assume, without deciding, that the more demanding standard discussed in *Alvarez* applies here, as survival under the former yields the same result under the latter.

"Most exacting scrutiny" requires the government to establish that the "regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Boos v. Barry*, 485 U.S. 312, 321–22 (1988). Here, the statute prohibits impersonation of federal officials and employees to "protect the integrity of Government processes," *Alvarez*, 567 U.S at 721 (plurality opinion), and "maintain the general good repute and dignity of the government service itself," *Lepowitch*, 318 U.S. at 704 (internal parentheses omitted).

Bonin does not dispute that public safety and protection of the reputation of law enforcement are compelling interests. We are not alone in concluding they are. The Fourth Circuit addressed the same issue and held that "*Alvarez* … confirms … the very real problem of law enforcement impersonations and the misfortunes that can flow from them." *United States v. Chappell*, 691 F.3d 388, 397 (4th Cir. 2012) (rejecting that *Alvarez* invalidated Virginia law prohibiting impersonation of police). Likewise, the Ninth Circuit has held: "As *Alvarez* made clear, the government has the constitutional power to prohibit the impersonation of federal officials and employees" and characterized that prohibition as serving "substantial government interests." *United States v. Tomsha-Miguel*, 766

F.3d 1041, 1048–49 (9th Cir. 2014) (applying intermediate scrutiny and holding § 912 is a constitutionally permissible restriction on free speech).[7]

Pretending to be a law enforcement officer could, without more, help someone improperly gain entrance to a home, school, or any other secured location. *See Chappell*, 691 F.3d at 392 (observing same). That is what happened here: Bonin's lies gave him cover to bring a gun and loaded magazine clip into a dark and crowded theater.[8] Because false impersonation of a federal officer could have serious security ramifications and erode the public's trust in federal institutions, the government's interest in protecting the integrity of government processes is compelling.

Given the government's compelling interest, the only question is whether § 912 is "narrowly drawn to achieve" those interests. *Boos*, 485 U.S. at 321–22. We look again to *Alvarez*. False statements are not categorically excluded from First Amendment protections. In recognizing this principle, *Alvarez* distinguished between unprotected lies (like fraud, speech integral to criminal conduct, defamation, and perjury)

---

[7] Bonin argues the *Tomsha-Miguel* holding was "called into doubt" by a subsequent Ninth Circuit en banc opinion, which held unconstitutional 18 U.S.C. § 704(a), a section of the Stolen Valor Act that criminalizes the unauthorized wearing of military medals. *See United States v. Swisher*, 811 F.3d 299, 318 (9th Cir. 2016). We disagree, as the Ninth Circuit said the opposite in *Swisher* when it "reject[ed] … reasoning that § 704(a) is like the statutes described in *Alvarez* that prohibit impersonation of government officials, like 18 U.S.C. § 912." *Id*. at 316.

[8] Although witnesses at the theater observed only one gun, Bonin reported he actually carried six firearms because that is how he "usually arm[s]" himself.

and protected lies (like those covered by the Stolen Valor Act, which "targets falsity and nothing more").[9] 567 U.S. at 717, 719; *see also id*. at 734–35 (Breyer, J., concurring in the judgment) (distinguishing § 912 and its "narrower" scope from the Stolen Valor Act). What sets § 912 apart from the Stolen Valor Act is the requirement of an overt act in conformity with the lie.

The Stolen Valor Act's flaw was that "its plain terms applie[d] to a false statement made at any time, in any place, to any person. … And it does so entirely without regard to whether the lie was made for the purpose of material gain." *Id*. at 722–23 (plurality opinion).[10] Section 912's acts-as-such clause is more narrowly tailored because it requires intentional "act[ion] in the pretended character … sought to cause the deceived person to follow some course he would not have pursued but for the deceitful conduct." *Lepowitch*, 318 U.S. at 704; *see also Tomsha-Miguel*, 766 F.3d at 1049 (finding the statutory elements of § 912 incorporate an intent to deceive). Applying the reasoning of *Lepowitch* here, the evidence showed

---

[9] The Stolen Valor Act provided: "Whoever falsely represents himself or herself, verbally or in writing, to have been awarded any decoration or medal authorized by Congress for the Armed Forces of the United States … shall be fined under this title, imprisoned not more than six months, or both." 18 U.S.C. § 704(b) (2005).

[10] The plurality opinion in *Alvarez* called the government's interests "compelling" but held that the Stolen Valor Act's restriction was not "the least restrictive means among available, effective alternatives." 567 U.S. at 725–29. Notably, Congress amended the Stolen Valor Act after the *Alvarez* decision, now making it a crime to "fraudulently hold[] oneself out to be a recipient" of specified military decorations or medals "with the intent to obtain money, property, or other tangible benefit." *See* 18 U.S.C. § 704.

that Bonin both sought to deceive the movie audience to tolerate his rude behavior and sought to deceive the police officers to avoid taking action against him for his threatening conduct in the theater.

Because the acts-as-such clause prohibits more than mere lies, it falls outside the scope of *Alvarez's* holding. *Alvarez*, 567 U.S. at 721 ("Statutes that … prohibit impersonating a Government officer, also protect the integrity of Government processes, quite apart from merely restricting false speech."). Instead, the clause is "narrowed … to a subset of lies where specific harm is more likely to occur," which "help[s] to make certain that the statute does not allow its threat of liability or criminal punishment to roam at large." *Id*. at 736 (Breyer, J., concurring in the judgment). "Where false claims are made to effect a fraud … it is well established that the Government may restrict speech without affronting the First Amendment." *Alvarez*, 567 U.S. at 723 (plurality opinion). Although the Court's observations on § 912 arose in dicta, they inform us where the Court stands. *McBride v. CSX Transp., Inc.*, 598 F.3d 388, 405 (7th Cir. 2010) ("[W]e must treat with great respect the prior pronouncements of the Supreme Court, even if those pronouncements are technically dicta."). For these reasons, we follow *Alvarez's* approach and hold that § 912 is narrowly drawn to serve the government's compelling interests.

We turn now to whether the acts-as-such clause prohibits a substantial amount of protected speech, violating the overbreadth doctrine.

Because an overly broad law may deter constitutionally protected speech, the overbreadth doctrine allows persons, like Bonin, "to attack overly broad statutes even though the

conduct of the person making the attack is clearly unpro-tected and could be proscribed by a law drawn with the req-uisite specificity." *New York v. Ferber*, 458 U.S. 747, 769 (1982). Even still, the "strong medicine" of the doctrine is employed "with hesitation, and then 'only as a last resort.'" *Id*. (citation omitted). "[T]he mere fact that one can conceive of some im-permissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge. *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984) (denying overbreadth challenge after plaintiffs "simply failed to demonstrate a realistic danger that the ordi-nance will significantly compromise recognized First Amend-ment protections of individuals not before the Court"). Rather, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Id*. at 801.

Bonin fails to raise any "realistic danger" that the acts-as-such clause will compromise First Amendment rights. Bonin offers weak examples: "a fired Treasury employee" who "conceal[s] his unemployment from his spouse and claim[s] he is 'going to work' each morning"; and "[a]n Internet dater" who "fak[es] an FBI agent work emergency to end a bad date early." According to Bonin, "the 'acts' offense [even] criminal-izes theater and Halloween." These far-fetched hypotheticals do not presage any risk that the acts-as-such clause will cause third parties to avoid constitutionally protected speech. Moreover, "[t]he overbreadth claimant bears the burden of demonstrating, from the text of the law and from actual fact, that substantial overbreadth exists." *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (internal quotations and citations omitted); *see also Ctr. for Individual Freedom*, 697 F.3d at 479–80 ("The central

question … is whether the provisions at issue potentially reach a 'substantial' amount of protected speech."). Bonin's hypothetical cadre of costume wearers and regretful suitors fail to satisfy these conditions. The acts-as-such clause raises no overbreadth problems.

Bonin's last attack on § 912's constitutionality is for vagueness. It is a "basic principle of due process" that a statute is void for vagueness "if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

Critically, Bonin makes no claim that the acts-as-such clause is vague with respect to his own conduct. The flagrancy and frequency of Bonin's lies at the theater fit within the prohibition of § 912 to "falsely assume[] or pretend[] to be an officer or employee acting under the authority of the United States." Bonin's vagueness claim does not survive "the rule that 'a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010) (internal brackets omitted) (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982)). "That rule makes no exception for conduct in the form of speech." *Id*. The facts here do not present a close call on this issue. Because Bonin's conduct is "clearly proscribed," we see no reason to evaluate the merits of his vagueness claim.

**B**

Bonin next argues the district court "misinstructed the jury on essential elements" of an acts-as-such offense. He also contends the district court erred in refusing to give his proffered First Amendment and unanimity instructions.

We review Bonin's challenge to the elements instruction in two steps. First, we review de novo "whether [the] jury instructions accurately summarize the law, but give the district court substantial discretion to formulate the instructions provided that the instructions represent a complete and correct statement of the law." *United States v. Daniel*, 749 F.3d 608, 613 (7th Cir. 2014) (citation omitted). If the instructions are legally accurate, then we review the district court's phrasing of the instructions for abuse of discretion. *Id*.

Here, the instruction read:

> In order for you to find the defendant guilty of these charges, the government must prove each of the following two elements beyond a reasonable doubt:
>
>> 1. That the defendant falsely assumed or pretended to have been an officer or employee acting under authority of the United States Marshals Service; and
>>
>> 2. That the defendant acted as such.
>
> With respect to acting "as such," the government must prove that the defendant acted in a manner consistent with his pretended authority as an officer or employee of the United States Marshals Service.

The components of the instruction are either direct quotations from § 912's text (the numbered portion of the instruction) or an accurate restatement of case precedent from the Supreme Court and this court (the final sentence). *Compare Lepowitch*, 318 U.S. at 704 ("Government officials are impersonated by any persons who 'assume to act in the pretended

character.'") *with Rippee*, 961 F.2d at 678 ("Section 912 criminalizes … false impersonation of a federal official coupled with an overt act in conformity with the pretense … .") *and United States v. Hamilton*, 276 F.2d 96, 98 (7th Cir. 1960) ("The words 'acts as such' as used in [§] 912 … have been construed to mean acting in the pretended character, [without] necessarily doing an act which defendant would have been authorized to do under authority of the assumed [office]."). Providing jurors with these accurate summaries of applicable law is not an abuse of discretion.

Bonin argues the district court should have instructed the jury on three additional elements of an acts-as-such offense: a *mens rea* component, an assertion of authority component, and causation. We address his proposed elements in turn.

The government concedes the district court erred in omitting a *mens rea* instruction. *See*, e.g., *Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015) ("The fact that the statute does not specify any required mental state, however, does not mean that none exists."). Even so, "an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder v. United States*, 527 U.S. 1, 9 (1999). The omission of an element is subject to harmless-error analysis. *Id*. at 10.

In *Neder*, the Supreme Court set forth the test to determine whether an error is harmless: "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" *Id*. at 18. Here, Bonin not only pretended to be a U.S. Marshal to break a rule, he did so with an attitude of entitlement, undermining the integrity and professionalism of the U.S. Marshals Service. Then, he kept the con

going, lying to police to avoid being arrested or kicked out of the theater. And after that scam worked, he gloated and flashed a gun as he reentered the theater. Section 912 prohibits such conduct. More importantly, a fairly selected and impartial jury weighed all the evidence, including Bonin's own testimony, and rejected his defense.[11] *See id.* at 9. On the record in this case, no jury could reasonably find that Bonin's continual falsehoods were not knowing and intentional. We thus hold that the district court's failure to submit a *mens rea* element was harmless error.

Bonin also claims the district court erred when it failed to instruct that acts-as-such impersonation requires an assertion of authority. He contends this instruction is required to "harmonize" our holdings in *Hamilton* and *Rippee*. We disagree on both fronts. First, Bonin's proposed instruction ignores the plain language of § 912, which contains no "assertion of authority" requirement. Second, Bonin's proposal would nullify the acts-as-such clause as a separate and distinct violation of § 912. On this point, he labors under the misimpression that a tension exists between *Hamilton* and *Rippee*. In *Hamilton*, the defendant committed acts-as-such impersonation when wearing a firearm in someone's home while falsely pretending to be an F.B.I. agent. 276 F.2d at 97–98 (affirming judgment of conviction). *Rippee* involved a defendant charged under the

---

[11] At trial, Bonin denied making false representations. He did not argue his conduct was based on his mistake, an accident, or his ignorance of the law. On appeal, Bonin claims to be a "fugitive recovery agent" and "proud bounty hunter," although he has never recovered a fugitive. According to Bonin, the "confusing relationship between bounty hunting and the Marshal Service" created the misperception that he said he was a U.S. Marshal.

demands clause who pretended to be a U.S. Marshal and asserted false authority (that he was dispatched to break up a fight) to avoid a traffic ticket for an illegal U-turn. 961 F.2d at 678 (affirming judgment of conviction). These opinions apply different requirements because they concern different § 912 offenses, and there is no conflict in their holdings.

Bonin's request for a causation instruction—telling jurors the "acts" must cause someone to change their behavior—also fails because the text of § 912 does not mention causation. Nor has our court interpreted the statute to require causation to prove an acts-as-such offense. We decline Bonin's invitation to decree requirements not included in the statute itself.

Bonin also asked for unanimity and First Amendment instructions. "We review de novo a district court's refusal to provide a requested jury instruction when the underlying assignment of error implicates a question of law, but general attacks on the jury instructions are reviewed for an abuse of discretion. *United States v. Bloom*, 846 F.3d 243, 255 (7th Cir. 2017) (citations and internal quotation marks omitted).[12]

Bonin speculates the jury may have convicted him without agreeing on which of his false representations violated the

---

[12] Bonin additionally contends "[t]he district court erroneously refused to instruct the jury" as follows: (1) "[a] person does not falsely represent himself if he tells the truth as he understands it"; and (2) "if you find that the government did not prove beyond a reasonable doubt that Mr. Bonin did not act in good faith, then you must find him not guilty." But he neither explains these defense theories nor develops any argument applying them to this case. Because the claims are "perfunctory and undeveloped," they are waived. *Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 652 n.2 (7th Cir. 2015).

law. He claims a unanimity instruction would have fixed that problem. "[W]hile a jury's unanimity is required in regard to each principal element of a criminal offense, 'a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible *means* the defendant used to commit an element of the crime.'" *Daniel*, 749 F.3d at 613 (quoting *Richardson v. United States*, 526 U.S. 813, 817 (1999) (emphasis added)). Here, Bonin's repeated false statements that he was a U.S. Marshal, in addition to his brandishing a badge and a gun, were the "underlying brute facts" of the verdict against him. In other words, "they were merely the means he used to commit an element of the crime." *Id*. at 614. Because "the instructions used in this case accurately conveyed the law," *id*., the district court did not abuse its discretion when it declined to give the unanimity instructions Bonin requested.

Bonin also claims the absence of a First Amendment instruction exposed him to a conviction for protected expression. He insists the district court erred by refusing an instruction saying "the First Amendment … prevents the government from criminalizing mere hyperbole, sleaziness, bad behavior, bragging, or puffery, or the expression of an opinion. It is not illegal to simply pretend to be a United States Marshal." But for the reasons explained above, Bonin's proposed instruction misstates the law. And allowing a jury to muse on the First Amendment's influence on a constitutionally valid statute risks confusion on the elements of the offense and on the government's burden of proof. The government needed to prove the elements of § 912's acts-as-such offense beyond a reasonable doubt, which it did. The

district court properly refused to give a First Amendment instruction.

### C

Finally, Bonin presents a series of evidentiary issues he believes warrant reversal. We start with his claim that the admission of pseudo law enforcement items seized from his home, as well as social media images of him in law enforcement regalia, unfairly prejudiced his defense. After that, we consider the admission of Alfich's text messages. Then, we examine whether the district court erred by denying Bonin's motion to suppress his statements to Officer Guillory. Last, we consider whether Bonin was entitled to present certain evidence that he lawfully carried his gun in the theater.

During cross-examination of Bonin, the government introduced three badges, one automobile magnet, and a knit cap seized from Bonin's home, in addition to Facebook photos of Bonin posing as a law enforcement officer. Bonin alleges the admission of these items violated FED. R. EVID. 404(b) and 403, as they were used to demonstrate his propensity to impersonate law enforcement and resulted in unfair prejudice. We review the district court's decision to admit this evidence for abuse of discretion. *United States v. Anzaldi*, 800 F.3d 872, 882 (7th Cir. 2015).

Rule 404(b) provides that "[e]vidence of a crime, wrong, or *other act* is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b) (emphasis added). Yet the rule permits other-act evidence for non-propensity purposes, including proof of intent. *Id*. When, as in this case, "intent is 'at issue' because the defendant

makes it an issue," other-act evidence may be admissible to prove intent, "but it must be relevant without relying on a propensity inference, and its probative value must not be substantially outweighed by the risk of unfair prejudice." *United States v. Gomez*, 763 F.3d 845, 859 (7th Cir. 2014).

Before trial, the district court excluded the items seized from Bonin's home and his social media postings. Yet the court allowed this other-acts evidence on cross-examination after Bonin denied ever intending to give the impression that he was a U.S. Marshal, not just in the theater, but at any time in his life. Bonin also testified that any resemblance the identification card he gave to Guillory and the badge he wore at the theater had to official law enforcement items was coincidental and created by his "employer." At that point, Bonin opened the door to the government's impeachment with evidence of pseudo federal law enforcement items from his home. *See Gomez*, 763 F.3d at 858 ("[I]n order for the government to introduce prior bad acts to show intent, the defendant must put his intent at issue first.").

The government asked Bonin whether he purchased these items himself, which he affirmed. These questions were also permissible impeachment after Bonin disclaimed an intent to trick anyone at any time into believing he was a U.S. Marshal. For example, Bonin acknowledged placing the words "U.S. Detective" and a gold star magnet similar to a U.S. Marshal insignia on his vehicle, but he denied any intent to make people think he was a federal law enforcement officer. When Bonin denied such an intent, this evidence became relevant for the non-propensity purpose of proving his contrary intent. Accordingly, the challenged evidence clears Rule 404(b)'s bar on propensity evidence.

The next question, then, is whether the probative value of this evidence "is substantially outweighed by a danger of … unfair prejudice." FED. R. EVID. 403. As a general matter, "intent becomes more relevant, and evidence tending to prove intent becomes more probative, when the defense actually works to deny intent, joining the issue by contesting it." *United States v. Miller*, 673 F.3d 688, 697 (7th Cir. 2012).

Here, intent became a contested issue after Bonin denied intending to deceive others *at any point in time* into believing he was federal law enforcement. The challenged evidence— which bore stark resemblances to federal law enforcement attire, phrases, and insignia, and which Bonin purchased himself—had high probative value because it went directly to Bonin's intent to deceive the public.

We "accord great deference" to the district court's evidentiary determinations "because of the judge's first-hand exposure to the evidence[,] … familiarity with the case[,] and ability to gauge the impact of the evidence on the jury in the context of the trial." *United States v. Williams*, 216 F.3d 611, 615 (7th Cir. 2000).[13] In addition, the district court gave a limiting

---

[13] Two days before trial, the district court's executive committee reassigned this case from Judge Robert Gettleman to Judge Donald E. Walter of the Western District of Louisiana, who had been designated to perform judicial duties in the Northern District of Illinois. Bonin contends Judge Walter's substitution on the eve of trial rendered him incapable of familiarity with this case, and therefore, "no deference is due" to his evidentiary rulings and we should apply a heightened standard of review to all his decisions. Bonin cites no authority to support this argument. Regardless, the argument fails because Judge Walter's evidentiary rulings were proper.

instruction to avoid any possibility that the jury would improperly view this as "propensity" evidence. The court directed the jury to consider this evidence for impeachment alone, as well as that the jury could not infer that because Bonin committed any act in the past he was more likely to have committed the charged offense. Affording "great deference" here, the district court was within its discretion to admit the challenged evidence.

Bonin also argues the district court erred by admitting the text messages sent from the theater by witness Patrick Alfich. Once again, we review for abuse of discretion. *Anzaldi*, 800 F.3d at 882. In the government's rebuttal case, Alfich testified regarding text messages he sent immediately after witnessing Bonin's outbursts. The statements contained in those text messages were admitted as prior consistent statements under FED. R. EVID. 801(d)(1)(B).

A statement is not hearsay, and is admissible as a prior consistent statement under Rule 801(d)(1)(B), if four conditions are met: (1) the declarant testifies at trial and is subject to cross-examination; (2) the prior statement is consistent with the declarant's trial testimony; (3) the statement is offered to rebut an express or implied charge of recent fabrication or improper motive; and (4) the statement was made before the declarant had a motive to fabricate. *United States v. Davis*, 896 F.3d 784, 788–89 (7th Cir. 2018). Bonin argues the third requirement was not met because he never directly accused Alfich of fabrication. But his argument ignores that Rule 801(d)(1)(B) allows a prior statement to rebut an "*implied charge* that the declarant recently fabricated." FED. R. EVID. 801(d)(1)(B)(i) (emphasis added).

"[T]he precise contours" of a charge of fabrication "may be unclear." *Miller v. Greenleaf Orthopedic Assocs., S.C.*, 827 F.3d 569, 574 (7th Cir. 2016). Yet "determining whether a witness's past statement has any potential to rebut the allegation will necessarily involve an exercise of the trial judge's discretion." *Id.* Here, Bonin's testimony on direct and cross-examination directly contradicted Alfich and implied that Alfich's testimony about Bonin's false statements, threats, and behavior was fictional. *See United States v. Ruiz*, 249 F.3d 643, 647–48 (7th Cir. 2001) (holding an accusation of fabrication existed where defendant "raised the implication" that the witness's testimony "was fictional"). Given these reasons, the district court's ruling was supported and reflects a proper exercise of discretion.

As to the admission of the pseudo law enforcement items, the social media images, and the text messages, reversal is required if an evidentiary error "had a substantial and injurious effect or influence on the jury's verdict." *United States v. Reddit*, 381 F.3d 597, 601 (7th Cir. 2004) (quote omitted). An evidentiary error meets this standard "only when a significant chance exists that they affected the outcome of the trial." *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012). Given the trial evidence, these standards are not met here.

Bonin also appeals his initial police encounter. He argues the officers lacked reasonable suspicion to believe he was involved in criminal activity at the theater, and therefore "everything that happened during the stop should have been suppressed." We review a district court's denial of a motion to suppress under a "dual standard of review"; legal conclusions are reviewed de novo, but findings of fact for clear error. *United States v. Edgeworth*, 889 F.3d 350, 353 (7th Cir. 2018).

"A limited intrusion into an individual's privacy is permitted under the Fourth Amendment where the police have reasonable suspicion to believe criminal activity is afoot." *United States v. Richmond*, 924 F.3d 404, 411 (7th Cir. 2019) (citations omitted). Reasonable suspicion exists when an officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. *Id*. We "presume the reliability of an emergency 911 call reporting an emergency situation for purposes of establishing reasonable suspicion." *United States v. Drake*, 456 F.3d 771, 775 (7th Cir. 2006).

Here, Guillory arrived at the theater in response to a 911 call reporting a person with a gun causing a disturbance at the theater. Reidy identified Bonin as the person causing the disturbance, and Guillory observed the gun on Bonin's belt. Objectively reasonable grounds existed for police to suspect that Bonin was engaged in unlawful activity. As for the scope of Guillory's questioning, "[i]t is well settled that police may approach an individual in a public place and seek the individual's cooperation in answering a few questions. Such an encounter is not a 'seizure' within the meaning of the Fourth Amendment." *United States v. Adamson*, 441 F.3d 513, 519–20 (7th Cir. 2006); *see also United States v. Drayton*, 536 U.S. 194, 201 (2002) ("Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, [and] ask for identification … ."). After learning Bonin was the suspect reported, Guillory asked him for his version of events, and took his driver's license only long enough to verify he had a valid concealed carry license. Minutes later, Bonin reentered the theater. Because the evidence supported a finding of reasonable suspicion, and that Bonin was not

"seized" in violation of the Fourth Amendment, the district court did not err in denying Bonin's motion to suppress.

Finally, Bonin argues the district court violated the Sixth Amendment by excluding evidence of: Illinois's concealed carry law; the absence of signs prohibiting guns at the theater; and testimony from Bonin's bounty hunting instructor, John Howard, about firearms training he gave Bonin.

We review the district court's decisions to exclude Bonin's proffered evidence for an abuse of discretion. *United States v. Alayeto*, 628 F.3d 917, 920–21 (7th Cir. 2010) (citation omitted). But we review de novo the question of whether the evidentiary ruling infringed upon a defendant's constitutional rights. *Id*. (citation omitted).

The district court properly excluded Bonin's proffered evidence for three reasons. First, the district court correctly observed the evidence was irrelevant under Rule 401 because Bonin was not charged with violating Illinois's concealed carry laws or the movie theater's policy prohibiting firearms. Evidence about Bonin openly wearing a gun and a badge on his belt was relevant because that conduct was part and parcel of his false impersonation of a U.S. Marshal. Conversely, whether Illinois law allowed Bonin to have a gun in the theater, the theater's signage on this issue, and what John Howard told Bonin about Illinois law, were all irrelevant. None of that evidence had a tendency to make a fact of consequence to his guilt or innocence more or less probable. *See* FED. R. EVID. 401.

Second, Bonin's proposed evidence failed under Rule 403 balancing. Any probative value of the evidence was substantially outweighed by the danger that it would confuse the issues and mislead the jury into thinking that Bonin's guilt on

a § 912 charge was somehow intertwined with his compliance with Illinois law and training he received from some third party. Third, Bonin presented a defense on all these issues. For example, Howard did testify on the training he gave his "agents," like Bonin, as to how and when they could carry guns. Likewise, Bonin testified about his concealed carry license, his purported work as a bounty hunter, his training for that position, and that he was unaware the theater prohibited guns. So the district court neither prevented Bonin from presenting this defense, nor abused its discretion when it excluded irrelevant and misleading evidence that Bonin requests on appeal.

### III

Fictional tales are a part of the cinema experience. But when Bonin upstaged the on-screen performances as a make-believe marshal, he broke the law. The First Amendment cannot save him, and his jury instruction and evidentiary claims do not persuade us, so we AFFIRM.