In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 22-2614

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

PATRICK HANCOCK,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:22-cr-00055-TWP-MJD-1 — **Tanya Walton Pratt**, *Chief Judge.*

———————

ARGUED NOVEMBER 28, 2023 — DECIDED JUNE 5, 2024

———————

Before EASTERBROOK, HAMILTON, and BRENNAN, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Defendant-appellant Patrick Hancock pled guilty to unlawful possession of a firearm as a convicted felon. His federal sentence was enhanced on the ground that when he possessed the firearm, he also violated Indiana Code § 35-44.1-2-6, which makes it a felony for a civilian to impersonate a law enforcement officer. Hancock

appeals his sentence, challenging that Sentencing Guidelines enhancement.

We affirm. Evidence supported the district court's findings that Hancock represented himself to be a police officer by wearing a variety of law enforcement paraphernalia, including an official-looking badge, gun holster, handcuffs, and a baton. We also reject Hancock's constitutional challenges to the Indiana law. Indiana Code § 35-44.1-2-6 is a permissible regulation of false speech because it is narrowly tailored to serve the government's compelling interest in public safety, and it is neither overbroad in its reach nor void for vagueness.

I.   *Factual and Procedural Background*

Patrick Hancock entered a Costco store in Avon, Indiana on December 6, 2021. Employees at that store had been warned by employees at other Costco stores to be on the lookout for Hancock because he was suspected of passing fraudulent checks. When employees spotted Hancock in the Avon store, they noticed that he wore clothing and accessories resembling what a police officer might wear. Around his neck, Hancock wore a gold Drug Enforcement Administration (DEA) "Special Agent" badge. At his hip he wore a holster with a Glock pistol in it. Hancock's holster matched the model used by Avon Police Department officers. On his belt, Hancock had fastened two pairs of handcuffs, a baton, and an extra, loaded 9-mm Glock magazine. He also kept a star-shaped security badge in his pocket.

A Costco employee called the Avon Police Department to report the situation. Real police officers arrived. They advised Hancock of his *Miranda* rights and questioned him about the items he wore. Hancock said that he had bought the DEA

badge online and wore it because it made him feel as though he were a part of something bigger.

This was not the first time Hancock had donned attire resembling a police uniform. In 2008, Hancock was convicted in state court for a felony for impersonating a police officer. In 2009, he brandished a fake "7-point star special security officer badge" when security guards at a local hardware store stopped him from stealing products. In 2011, Hancock tried to use a fake police badge to obtain free entrance and free drinks at a strip club. Hancock doubled down on his false representation during this incident: after being kicked out for trying to gain free entrance and drinks, Hancock told the strip club's owner that he was a law enforcement officer and again brandished his fake badge.

Most recently, in 2017, Hancock tried to "arrest" a woman working at a different strip club by using a fake arrest warrant. He arrived at the strip club in a car bearing a U.S. government license plate and wore clothing displaying credentials, badges, and markings associated with the Department of Homeland Security. Police officers later found an array of other paraphernalia in Hancock's home, including a loaded Glock handgun, a federal badge, and handcuffs.

At the Costco in Avon, police officers arrested Hancock for impersonating a public servant and for being a felon in possession of a firearm. He was later charged in federal court with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and making a false statement to a federal firearms licensee in violation of 18 U.S.C. § 922(a)(6). Hancock pled guilty to the felon-in-possession charge, and the government dismissed the second charge.

The presentence report recommended a guideline sentence between 24 and 30 months in prison based on a total offense level of 15 and a criminal history category of III. Hancock's total offense level was calculated as follows. He was "a prohibited person" at the time of his offense, so his base offense level was 14 under U.S.S.G. § 2K2.1(a)(6). Four levels were added because Hancock possessed the firearm in connection with another felony offense—impersonating a public servant in violation of Indiana Code § 35-44.1-2-6. See U.S.S.G. § 2K2.1(b)(6)(B). Three levels were subtracted for acceptance of responsibility.

Hancock objected to the four-level enhancement. Hancock conceded that he "was clearly dressed as a law enforcement officer" at Costco, but he argued that he did not make any "attempt to deceive and he did not represent himself to anyone as an officer."

The district court overruled Hancock's objection and applied the four-level sentencing enhancement. The court found that Hancock's attire, which he said he wore to feel like he was "a part of something bigger," was sufficient to prove by a preponderance of the evidence that § 2K2.1(b)(6)(B) applied. Ultimately, the court sentenced Hancock to 48 months in prison to be followed by three years of supervised release. The district court varied upward from the Sentencing Guidelines range because it found, among other things, that Hancock's crime involved "extreme conduct" and that greater punishment was needed to deter future criminal conduct. On appeal, Hancock has not challenged the grounds for or extent of the upward variance.

II.  *Analysis*

We review de novo the district court's application of the Sentencing Guidelines. *United States v. Gallardo*, 497 F.3d 727, 740 (7th Cir. 2007). Findings of underlying facts used in applying the Guidelines are reviewed for clear error. *Id*. "A finding of fact is clearly erroneous only if, based upon the entire record, we are left with the definite and firm conviction that a mistake has been committed." *Id.*, quoting *United States v. Chamness*, 435 F.3d 724, 726 (7th Cir. 2006).

Hancock argues that the district court erred in applying § 2K2.1(b)(6)(B). His theory is that he did not intend to deceive anyone at Costco into thinking he was a law enforcement officer. He contends that he meant only to give off "a passive appearance consistent with that of a law enforcement officer." Alternatively, Hancock argues that Indiana's false impersonation statute violates the First Amendment, both facially and as applied to him and his conduct. We reject both challenges.

A.  *Intent to Deceive*

We start with Hancock's statutory and guideline challenge. To apply § 2K2.1(b)(6)(B), the government must prove by a preponderance of the evidence that Hancock "used or possessed" a firearm "in connection with another felony offense." Based on his clothing and equipment and his statement about wanting to be a part of something bigger, the district court found that Hancock had committed a felony violation of Indiana Code § 35-44.1-2-6 by impersonating a public servant. That statute provides:

(a) A person who, with intent to:

   (1) deceive; or

   (2) induce compliance with the person's instructions, orders, or requests;

   falsely represents that the person is a public servant, commits impersonation of a public servant, a Class A misdemeanor, except as provided in subsection (b).

(b) The offense described in subsection (a) is a Level 6 felony if the person falsely represents that the person is:

   (1) a law enforcement officer; or

   (2) an agent or employee of the department of state revenue, and collects any property from another person.

On appeal, Hancock argues that he did not violate this statute because he did not take any affirmative action to "represent" himself as a law enforcement officer. Walking through Costco's aisles dressed as a police officer is not enough to violate the statute, according to Hancock. He would have had to act in some more affirmative manner, such as by telling another patron that he was a police officer.

This argument overlooks the affirmative actions that Hancock did take that day: donning clothing and paraphernalia that made him resemble a police officer. As Hancock concedes, he resembled an Avon police officer when he wore an official-looking DEA badge, handcuffs, baton, and holstered Glock into the Costco store.

Based on this evidence, we affirm the district court's finding that Hancock violated Indiana Code § 35-44.1-2-6. Genuine law enforcement officers "represent" themselves to bystanders by wearing clothing and equipment that identify themselves as such. The clothing and equipment signal that the officers possess certain training and authority to act as first responders and enforcers of the law. Their clothing and equipment convey this message even without any verbal assertion or corroboration.

Examples from case law show that a person can represent himself as a law enforcement officer through non-verbal indicators and that such a message is likely to be understood by those who view it. For example, civilians in distress may often seek assistance from people resembling law enforcement officers. E.g., *New York v. Quarles*, 467 U.S. 649, 651–52 (1984) (woman seeking assistance approached officers in patrol car). The markers displayed by actual officers, including symbols on their clothing and cars, signify that they have training in first aid and emergency response. Civilians reasonably rely on those non-verbal representations to seek help in emergencies. On the other hand, in recognition of the power wielded by police, civilians sometimes flee from law enforcement officers. *Illinois v. Wardlow*, 528 U.S. 119, 124–25 (2000) (discussing criminal reasons for flight from police); *id.* at 132 (Stevens, J., concurring in part) (discussing innocent reasons for flight from police).

In other words, simply wearing law enforcement clothing and equipment can affirmatively represent that the wearer is a law enforcement officer. Hancock seemingly realized this when he said that he wore the clothing and equipment to feel like a part of something bigger—it was the clothing and

equipment that made him feel that way, not any verbal representation.

As Hancock points out, cases applying this Indiana statute generally involve imposters making verbal statements that they are law enforcement officers. E.g., *Sincere v. State*, 228 N.E.3d 439, 444 (Ind. App. 2024) (defendant wore detective's shirt and badge and told shop owners he was a detective); *Ferree v. State*, 124 N.E.3d 109, 112 (Ind. App. 2019) (defendant wore sheriff's jacket and said he was "affiliated" with sheriff's department); *Poole v. State*, 559 N.E.2d 1214, 1215 (Ind. App. 1990) (defendant told nurse he was a police officer). But the lack of cases involving non-verbal representation does not mean that the statute does not apply to such misconduct. The statute does not require that the false representation be verbal. The district court did not err by finding that Indiana Code § 35-44.1-2-6 applied to Hancock's false representation of himself as a law enforcement officer in the Costco store.

B. *Constitutionality*

Hancock argues that even if the enhancement was proper under the Sentencing Guidelines themselves, Indiana's false-impersonation statute violates the First Amendment. He contends that the statute is an impermissible content-based restriction, is overbroad, and is void for vagueness.

We have our doubts about whether Hancock is in a position to challenge Indiana Code § 35-44.1-2-6 because he was not convicted of violating the statute. It was used only in calculating his sentencing range pursuant to advisory federal Sentencing Guidelines. See generally *Beckles v. United States*, 580 U.S. 256, 265 (2017) (federal Sentencing Guidelines not subject to vagueness challenge). Nevertheless, even if we

assume that Indiana Code § 35-44.1-2-6 is amenable to challenge when applied in a guideline calculation, Hancock's constitutional arguments are not persuasive.

### 1. *Content-Based Restriction*

Hancock first argues that Indiana's false impersonation statute impermissibly regulates false speech. The First Amendment protects some false speech—not including some long-recognized exceptions like obscenity, defamation, fighting words, fraud, and true threats, see *United States v. Alvarez*, 567 U.S. 709 (2012)—but the Indiana statute is a permissible regulation.

We treat Indiana Code § 35-44.1-2-6 as a content-based restriction because its application depends on "the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Content-based restrictions are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* We apply strict scrutiny here, though Indiana Code § 35-44.1-2-6 would of course also survive intermediate scrutiny.[1]

---

[1] In *United States v. Alvarez*, the Supreme Court invalidated the Stolen Valor Act, which at the time made it a crime to "falsely represent[]" oneself as having "been awarded any decoration or medal authorized by Congress for the Armed Forces of the United States." 567 U.S. 709, 715 (2012). The plurality opinion by Justice Kennedy applied strict scrutiny. *Id.* at 724–29. Justice Breyer (joined by Justice Kagan) concurred in the result but applied intermediate scrutiny. *Id.* at 731. In *United States v. Bonin*, we noted that *Alvarez* did not clearly resolve which standard should apply to content-based restrictions. 932 F.3d 523, 534 (7th Cir. 2019). We applied strict scrutiny because the statute at issue in *Bonin*—18 U.S.C. § 912—passed

In *United States v. Bonin*, we held that the federal analogue to Indiana's false-representation statute survived strict scrutiny. Michael Bonin was convicted of violating 18 U.S.C. § 912 because he brandished a holstered gun in a movie theater and told other moviegoers that he was a U.S. Marshal. 932 F.3d 523, 530 (7th Cir. 2019). We upheld his conviction and held that 18 U.S.C. § 912 did not violate the First Amendment. That federal statute provides:

> Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such, or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined under this title or imprisoned not more than three years, or both.

We concluded that § 912 was narrowly tailored to serve the government's compelling public interest in preserving public safety and protecting the reputation of law enforcement. *Id.* at 535–36. We relied in part on language from *Alvarez* and *United States v. Lepowitch* teaching that prohibitions on the false representation of government officials generally survive strict scrutiny because the prohibition is designed to "protect the integrity of Government processes" and "maintain the general good repute and dignity of the government service itself." *Bonin*, 932 F.3d at 535, quoting *Alvarez*, 567 U.S. at 721, and *Lepowitch*, 318 U.S. 702, 704 (1943). We also reasoned that § 912 was narrowly tailored to achieve its objective because it

---

constitutional muster under that exacting standard, so it would have also survived intermediate scrutiny. The same is true here.

required a person to commit some "overt act" in a false representation to fall within the statute's prohibition. *Id.* at 535–36.

Indiana Code § 35-44.1-2-6 is worded differently than § 912. The Indiana statute (as applied to this case) has two elements: the defendant must (1) have an "intent to deceive" and (2) falsely represent that he is a law enforcement officer. While acknowledging that *Bonin* upheld § 912, Hancock argues that Indiana's impersonation law fails strict scrutiny. He does not challenge that the Indiana statute serves a compelling government interest—a wise choice given that the Indiana statute and § 912 serve the same goals. He argues only that the Indiana statute is not narrowly tailored to serve those interests.

Hancock notes that Indiana Code § 35-44.1-2-6 does not require a defendant to seek material gain. He argues that the lack of such a requirement aligns this case more closely with *Alvarez* than with *Bonin*. In *Alvarez*, the Supreme Court invalidated the Stolen Valor Act because the statute prohibited nothing more than lying about receiving the Congressional Medal of Honor. 567 U.S. at 726–29 (plurality opinion). The Court noted that the statute prohibited all such false representations, regardless whether "the lie was made for the purpose of material gain." *Id.* at 723 (plurality opinion). By contrast, § 912 includes a "material gain" clause. We did not place much emphasis on that clause in *Bonin*, but Hancock argues it makes all the difference. We disagree.

For one thing, *Alvarez* noted that the lack of a material gain element is not fatal to a statute prohibiting civilians from falsely representing government officials. Even though statutes like § 912 and Indiana Code § 35-44.1-2-6 "may not

require proving 'an actual financial or property loss'" resulting from the false representation, they have generally been upheld so long as the statute is "confined to 'maintaining the general good repute and dignity of government service itself.'" *Alvarez*, 567 U.S. at 721 (alterations omitted), quoting *Lepowitch*, 318 U.S. at 704. That is exactly what Indiana Code § 35-44.1-2-6 does. The statute's actus reus (falsely impersonating a law enforcement officer) and mens rea (intent) narrowly tailor the statute to prohibit only the sort of misconduct that could endanger public safety or erode trust in law enforcement. A few examples show how.

The actus reus prevents the statute from criminalizing false representations that have no likelihood of fooling any reasonable person and consequently do not endanger the government's compelling interests. Cf. *Counterman v. Colorado*, 600 U.S. 66, 74, 78 (2023) (explaining that the existence of a "true threat" depends on "'what the statements conveys' to the person on the other end" (quoting *Elonis v. United States*, 575 U.S. 723, 733 (2015)). Thus, Hancock's argument that Halloween partygoers dressed as police officers could be convicted under Indiana Code § 35-44.1-2-6 is wrong because other partygoers are unlikely to be deceived. Rarely do Halloween partygoers go as far as Hancock did in portraying their characters.

Even if a civilian wears an outfit that perfectly replicates a law enforcement officer's uniform, he will not be convicted under Indiana Code § 35-44.1-2-6 unless he is found to have the "intent to deceive." This mens rea requirement achieves any tailoring left unfinished by the actus reus. By containing an "intent" element, Indiana Code § 35-44.1-2-6 targets those people—and only those people—who intend to do the very

thing that would threaten the government's compelling interests. This separates the "wrongful conduct from otherwise innocent conduct." *Elonis*, 575 U.S. at 736 (internal quotation omitted). There are no less-restrictive alternatives to proscribing misconduct that is done with intent to threaten a government interest.

The mens rea requirement saves the hypothetical characters in Hancock's brief. Imagine, for example, an actor portraying a police officer on a television show. An onlooker might see the actor in his costume, away from cameras and lights, and reasonably believe that the actor is a law enforcement officer. Yet, the actor does not intend to deceive the onlooker. He wears the outfit hoping that audience members will suspend their disbelief as to his true profession, but he does not intend to deceive the viewers into believing he has the actual training and authority of a real police officer.

Although Hancock disclaimed any intent to deceive, the objective circumstantial evidence surrounding his actions distinguishes his case from the hypothetical actor's. The actor has a legitimate reason for portraying a police officer, dispelling any reasonable inference of illicit intent that could be ascribed to his outfit. Hancock provided no such explanation. In fact, Hancock said that he wore the clothing to feel like part of something bigger. That statement, coupled with the clothing and equipment he displayed in the Costco store, amply supports the district judge's finding that Hancock hoped and intended his clothing and equipment would deceive other people into believing he was a law enforcement officer.

Indiana Code § 35-44.1-2-6 thus survives strict scrutiny under the First Amendment. By prohibiting only instances in which a reasonable person is likely to be misled and in which

a defendant intentionally tries to undermine the government's compelling interest, the statute is narrowly tailored to serve the government's compelling interests in preserving public safety and protecting the reputation of law enforcement.

### 2. *Overbreadth*

Hancock also makes a passing argument that Indiana Code § 35-44.1-2-6 is overbroad. A statute may be overbroad and facially invalid if it "punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep.'" *Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003), quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). Indiana Code § 35-44.1-2-6 is not overbroad for the same reasons we have explained that it is narrowly tailored. In particular, the mens rea requirement prevents the statute from sweeping in too much innocent conduct. Only those who intend to falsely represent themselves as law enforcement officers, and thereby put public safety at risk, fall within the statute's reach.

### 3. *Void for Vagueness*

Finally, Hancock argues that Indiana Code § 35-44.1-2-6 is void for vagueness. A criminal statute may violate due process requirements if it "fails to give ordinary people fair notice of the conduct it punishes," or if its language is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). Hancock argues that a person of reasonable intelligence would not know what it means to "represent" a law enforcement officer in violation of the statute.

That argument overlooks the focused scope that comes with the combination of actus reus and mens rea in Indiana Code § 35-44.1-2-6. The actus reus identifies the sort of misconduct prohibited by the statute: actions that could be interpreted as representing or impersonating a law enforcement officer. Any remaining vagueness concerns are mitigated by the statute's mens rea requirement. Not only must a civilian act in a way that represents a law enforcement officer, he must also *intend* his misrepresentation to deceive others. An "intent" mens rea diminishes the concerns that people of reasonable intelligence will not know their actions are prohibited. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 & n.14 (1982) (collecting cases stating this legal proposition).[2]

The judgment of the district court is AFFIRMED.

---

[2] To be sure, a specific-intent element is not necessarily a cure for an otherwise unconstitutionally vague statute. If the actus reus of a statute is itself too vague, a specific-intent element would not put a reasonable person on notice of the actions she should avoid. See *Smith v. Goguen*, 415 U.S. 566, 580 (1974); *Brown v. Kemp*, 86 F.4th 745, 775–76 (7th Cir. 2023). That is not the case here, where reasonable persons know what it is to impersonate a police officer.