UNITED STATES of America,
Plaintiff-Appellee,

v.

Michael CORD, Defendant-Appellant.

No. 80–2326.

United States Court of Appeals,
Seventh Circuit.

Argued April 27, 1981.

Decided July 20, 1981.

John Meyer, Chicago, Ill., for defendant-appellant.

Thomas M. Durkin, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SPRECHER and WOOD, Circuit Judges, and CAMPBELL, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Defendant-Appellant Michael Cord appeals from his conviction for false personation of a federal officer in violation of 18 U.S.C. § 912. On appeal, Cord alleges error in the trial court's failure to dismiss the indictment and in denying his motion to suppress the in-court identification of him by the victim. Accordingly, we are presented with two questions to decide: (1) whether an indictment under 18 U.S.C. § 912 is defective if it does not allege that the defendant acted with "intent to defraud," and (2) whether an identification is impermissibly suggestive where there is a seven-month delay and repeated photo displays are used. We decide both questions in the negative and so affirm the rulings of the district court on these issues.

On February 9, 1976, Cord telephoned Lois Mueller and, posing as an FBI agent, enlisted her aid in an "investigation" into unauthorized withdrawals from her bank account. At Cord's request, she agreed to withdraw $6,000 from her account and turn it over to him. Mueller met Cord the next

---

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

day at the main branch of her bank, but the exchange did not take place because that office was closed. One hour later, Cord called Mueller again and arranged to meet her at the drive-up facility of the bank. There, she made the withdrawal and turned over the $6,000 to Cord, having been promised that it would be redeposited in her account by a bank official. Cord left and Mueller's money was never returned to her account.

Later that year, in August, Cord again attempted his con game, this time posing as a bank auditor. However, his potential victim, Helen McDermott, called the police and Cord was arrested in the act of receiving the money withdrawn from her account.

I.

Cord was charged with a violation of the second part of 18 U.S.C. § 912 for pretending to be an agent of the FBI and obtaining $6,000 from Lois Mueller under that guise. Section 912 reads as follows:

> Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States of any department, agency or officer thereof, and acts as such, or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined not more than $1,000 or imprisoned not more than three years, or both.

The indictment did not include an allegation that Cord acted with intent to defraud. Appellant filed a motion to dismiss, contending that intent to defraud is an essential element of the crime of impersonating a federal officer and, therefore, its omission rendered the indictment defective. The basis for this contention is found in the fact that prior to the revision of the penal code in 1948, the statute included the phrase "with intent to defraud either the United States or any person." That phrase was deleted, the Reviser's Notes indicating that "[t]he words . . . were omitted as meaningless in view of *United States v. Lepowitch* [318 U.S. 702, 63 S.Ct. 914, 87 L.Ed. 1091 (1943)]. . . ." In *Lepowitch*, the Supreme Court considered whether a violation of the first part of the statute would require intent to deprive someone of something of value. In concluding that it did not, the Court stated, "We hold that the words 'intent to defraud,' in the context of this statute, do not require more than that the defendants have, by artifice and deceit, sought to cause the deceived person to follow some course he would not have pursued but for the deceitful conduct." *Id.* at 704, 63 S.Ct. at 916.

Cord finds support for his argument in cases decided by the Court of Appeals for the Fifth Circuit which have held that intent to defraud remains an essential element for prosecution under § 912. *United States v. Pollard*, 486 F.2d 190 (5th Cir. 1973); *United States v. Randolph*, 460 F.2d 367 (5th Cir. 1972); *Honea v. United States*, 344 F.2d 798 (5th Cir. 1965). The Fifth Circuit has interpreted *Lepowitch* as defining the nature of the fraud requirement rather than eliminating intent to defraud. In *Randolph*, the court explained that since the revisers sought to conform the code to "authoritative judicial construction," the new codification also retained the intent requirement. 344 F.2d at 802.

Four circuits disagree with this interpretation. *United States v. Rosser*, 528 F.2d 652 (D.C.Cir.1976); *United States v. Rose*, 500 F.2d 12 (2d Cir. 1974), *vacated on other grounds*, 422 U.S. 1031, 95 S.Ct. 2648, 45 L.Ed.2d 688 (1975); *United States v. Mitman*, 459 F.2d 451 (9th Cir.), *cert. denied*, 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 111 (1972); *United States v. Guthrie*, 387 F.2d 569 (4th Cir. 1967), *cert. denied*, 392 U.S. 927, 88 S.Ct. 2284, 20 L.Ed.2d 1386 (1968). In their view, the fact that Congress purposely deleted an element of the statute indicates that it intended the change be given effect. *See, e. g., Rosser*, 528 F.2d at 655; *Rose*, 500 F.2d at 16–17; *Guthrie*, 387 F.2d at 571.

The Seventh Circuit has not yet been required to address this issue. In *United States v. Fierson*, 419 F.2d 1020 (7th Cir. 1969), we explicitly expressed no opinion as to the correctness of an instruction to the jury which charged that intent to defraud

was an essential element of the offense. We also noted that the courts of appeals are divided as to this question. *Id.* at 1021 n. 4.

■ As we believe that a statutory amendment cannot be so easily set aside, we now join ranks with the courts that have held that intent to defraud need not be alleged in the indictment. The code section was changed to eliminate the element of intent to defraud; this change cannot simply be ignored. However, our conclusion is not inconsistent with the general purpose of the 1948 revision to preserve the original intent of Congress. *United States v. Cook,* 384 U.S. 257, 86 S.Ct. 1412, 16 L.Ed.2d 516 (1966).

The definition of "intent to defraud" in *Lepowitch* apparently led the revisers to believe that this language was excess verbiage. Therefore, implicit in the remaining language is the requirement that the "acts" and "demands" cause a victim to follow a path he would not otherwise have taken. Since the second part of the statute clearly requires that money, paper, documents or other things of value be gotten *because of the pretense,* it is logical to assume that the victim has been deceived into giving them. This is the conduct prohibited by the statute.

The amendment does not greatly expand the scope of the statute as the court in *Honea* contends. 344 F.2d at 803. As early as the Supreme Court decision of *United States v. Barnow* in 1915, it has been clear that "[i]t is the false pretense of Federal authority that is the mischief to be cured." 239 U.S. 74, 78, 36 S.Ct. 19, 21, 60 L.Ed. 155 (1915). The Court went on to say that while fraudulent intent was necessary (in the earlier version), "such pretense would rarely be made for benevolent purposes." *Id.* Where one is deceived into giving up something of value, as required by the second part of the statute, it is even more implausible that the purpose is pure. Thus there need be no allegation of fraudulent intent since allegation of acts sufficient to violate part two would satisfy the *Lepowitch* definition.

Since the indictment alleges all of the necessary elements under § 912, it is not deficient and the motion to dismiss was properly denied.

## II.

■ The confrontation between Mueller and Cord giving rise to this lawsuit occurred on February 10, 1976. On September 14, 1976, the police asked Mueller to identify the perpetrator of the deception by selecting one photograph from a display of eight. Mueller could not positively identify any one individual, but she did choose two photographs as most closely resembling him. Two weeks later, on October 1, 1976, Mueller was again shown a photo display, this time by the FBI. Of the eleven pictures, one was that of the defendant, Cord, but the other photo she selected in the previous display was not present. Mueller chose Cord's photo from this display.

Cord contends that these procedures were impermissibly suggestive and that the in-court identification by Mueller should have been suppressed. Specifically, Cord objects to the seven-month delay between the act and the first photographic display, and the fact that both photographs culled from the first display did not appear in the second.

The Supreme Court has established a right to exclude identifications resulting from procedures "so unnecessarily suggestive and conducive to irreparable mistaken identification ..." that they violate the defendant's due process rights. *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). In *Neil v. Biggers,* the Court set forth the factors to be considered in determining whether the identification was improper: (1) the opportunity of the witness to view the defendant at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description, (4) the level of certainty of the witness' identification, and (5) the length of time between the crime and the identification. 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–383, 34 L.Ed.2d 401 (1972). *Biggers* also makes clear that the question to be addressed is whether, under

the totality of the circumstances, there is a substantial likelihood of misidentification. *Id.* at 198, 93 S.Ct. at 381. *See Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

Therefore, while the delay and the procedures used in the photographic displays are factors to be considered in answering the question, they are not the only considerations. Furthermore, they may not be the controlling factors since sufficient indicia of reliability may overcome even unjustified suggestive procedures. *Israel v. Odom,* 521 F.2d 1370 (7th Cir. 1975).

This court in *Israel v. Odom* suggested a procedure to follow in assessing pretrial identification. First, there must be a determination of whether the procedures are suggestive. Then, if suggestive procedures are found, any justifications should be considered. Finally, an assessment must be made of the reliability in spite of the suggestiveness. 521 F.2d 1370 at 1373.

Appellant argues that the action of the FBI in excluding the photograph suggested to Mueller that the photograph of Cord was the right one. He also points out that there was a seven-month delay between the exchange and the identification. In *Biggers,* the Court found an identification acceptable despite a seven-month delay where the witness' reliability was otherwise good. Appellant argues that our case is unlike *Biggers* in that the initial failure to identify the defendant lessened the witness' reliability. The fact is that the witness narrowed the field to two similar photographs and did not go further. One of the photographs was of the defendant. While the degree of certainty is lower than if only the one photograph of Cord had been chosen, it is higher than if the wrong photograph or photographs had been identified.

Furthermore, whatever suggestiveness there may have been is reduced by considerations of other factors. The photographs of Cord were different in each of the displays.

There were more photographs in the second display, yet Mueller was able to make a positive identification of Cord. In addition, the two week period between the first display and the second weakens the contention that she simply chose the remaining picture. In his brief, Cord cites *United States v. Higginbotham,* 539 F.2d 17 (9th Cir. 1976), as standing for a rule that a repeated photograph display identification is prejudicial where a witness is equivocal at first and later becomes firm. The case does not establish such a rule, but only suggests that such a procedure "presents opportunities for abuse and due process problems...."[1] *Id.* at 23.

Focusing on the remaining *Biggers* factors, Mueller's reliability becomes more certain. She had two opportunities to view Cord at very close range and to talk with him. She was not distracted by any other activity or by fear of violence, but instead focused her attention on the man who was taking her savings. Both meetings occurred outside in daylight, giving her a clear view of his face. Furthermore, that same day she gave a description to the police which was found to bear a material resemblance to Cord.

Viewing the totality of the circumstances, as we are required by *Simmons* and *Biggers,* we cannot say that there was a substantial likelihood of misidentification. We therefore conclude that the district court correctly denied Cord's motion to suppress the identification.

The judgment of the district court is Affirmed.

---

1. An example of such a problem may be seen in *United States v. Russell,* 532 F.2d 1063 (6th Cir. 1976), where after narrowing the field to two photographs, the witness finally chose one. At that point, the agent in charge indicated that the witness had chosen the wrong photograph. The conviction was reversed.