NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0523n.06

Nos.  12-3768/3773/3880

**FILED**

*May 28, 2013*

DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| United States of America, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) **ON APPEAL** FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR THE |
| Quin Willis (No. 12-3768), | ) NORTHERN DISTRICT OF OHIO |
| Milton Willis (No. 12-3880), | ) |
| Laroy Dock (No. 12-3773), | ) |
| | ) |
| Defendants-Appellants. | ) |
| | ) |

Before:  MERRITT, SUHRHEINRICH, and DONALD, Circuit Judges.

**MERRITT, Circuit Judge.**  At common law and in Medieval law there were many kinds of "constables" with some type of law enforcement authority, *see* Black's Law Dictionary 383 (Rev. 4th ed. 1968), but there is no such office under federal law.  Nevertheless, the defendants claimed to be "U.S. constables" anyway.  They were convicted of impersonating federal officers and were put on probation for the offense but not incarcerated.

Defendant Laroy Dock owned a security company known as "Ohio State Police Constable Service," and at one time he was in fact legitimately authorized to act as a constable under Ohio law. Dock crossed from fact to fiction, however, when he and his co-defendants, the Willis brothers, began referring to themselves as special constables of the United States government.  They now

challenge their convictions for lack of sufficient evidence. Additionally, Dock contests the district court's treatment of his late-hour request for new counsel after the close of the proof. For the reasons below, we affirm.

What is a constable now? In the United States, the answer depends on the state. Ohio provides for two types. Board of township trustees may appoint "police constables" with rather broad authority, while county court judges may appoint "special constables" to guard public and private property. *See State v. Collier*, 722 N.E.2d 1096 (Ohio Ct. App. 1998). Apparently Dock was once appointed the latter sort of constable. What he decidedly was not—and has never been, given that the office does not exist—is a special constable of the United States.

That did not stop Dock and the Willis brothers from asserting authority as United States constables. As is relevant to this case, they did so four times. On the first occasion, Dock sought to purchase shields that said "Special Constable, U.S. Government." He successfully obtained the shields by providing paperwork stating that he was indeed employed by the federal government. On a separate occasion, Dock managed to buy U.S. constable identification cards for himself and the Willis brothers by providing a printing company with a template that included a watermark from the Department of Defense. On the third occasion, Milton Willis flashed his shield and a gun at a drug store employee and told responding police officers that he was a federal agent authorized to carry the weapon. The "constables'" last ride finally caught the federal authorities' attention. While Dock was on trial for state weapons charges, he and the Willis brothers appeared at the county courthouse wearing shirts that said "U.S. Constable." Upset that Dock had been told to cover the shirt, Dock and Milton Willis went across the street to the federal courthouse to complain that local authorities

were not recognizing their superior authority. Bona fide U.S. Marshals got wind of the scene and

went to investigate. At the county courthouse they found and questioned Quin Willis. The next day,

they questioned Milton Willis and got into a confrontation with Dock, who was upset that the

Marshals were interrogating his men.

The government filed a four-count indictment alleging violations of 18 U.S.C. § 912, which

in relevant part states, "Whoever falsely assumes or pretends to be an officer or employee acting

under the authority of the United States or any department, agency or officer thereof, and acts as

such, . . . shall be fined under this title or imprisoned not more than three years, or both." At the

close of the government's proof, Dock's appointed attorney informed the court that "Mr. Dock has

requested that I be removed as counsel on his behalf, and he deems me to be incompetent for

purposes of defending him." R. 62, Tr. of Jury Trial at 335. The district court summarily denied the

motion. The defendants declined to present any evidence, and the district court instructed the jury

that conviction under 18 U.S.C. § 912 requires proof of three elements:

> First, that the defendant assumed or pretended to be an officer or employee of the
> United States, that is, a United States Constable, and second, that such assumption
> and/or pretense was false, and the defendant knew that it was false, and third, that the
> defendant commits any overt act consistent with the assumed or pretended character.

*Id.* at 366. The jury returned a guilty verdict on all counts. The district court subsequently sentenced

Dock to three years' probation and the Willis brothers to two years' probation.

The defendants believe there was insufficient evidence to support the convictions. A

fabricated office may fall under the statute's reach, *see United States v. Barnow*, 239 U.S. 74 (1915),

and the defendants concede that they pretended to be employees of the United States. They argue,

however, that the government failed to prove they "acted as such." While the defendants invoke

*United States v. Alvarez*, 132 S. Ct. 2537 (2012), a case holding that the government may not ban

false speech alone, they do not challenge the constitutionality of the false personation statute or the

correctness of the jury instruction. They argue instead that the record does not reveal any "overt act

consistent with the assumed or pretended character." We do not agree. Even if, as the defendants

argue, wearing a shirt and making a verbal representation are not overt acts in themselves, other

evidence supported a finding that the defendants committed overt acts. The jury heard that Dock

presented false papers to confirm his purported status as a federal agent and that he provided a

printing company with a document suggesting association with the Department of Defense. Milton

Willis attempted to avoid arrest by identifying himself as a federal agent, and along with Dock he

sought to provoke actual federal agents into investigating local authorities. Moreover, all three

defendants appeared at a courthouse under the guise of law enforcement. Permitting false

representations of federal authority in such a context undoubtedly would interfere with the "general

good repute and dignity of . . . government . . . service itself," an evil that Congress is entitled to

prevent. *See Alvarez*, 132 S. Ct. at 2546 (quoting *United States v. Lepowitch*, 318 U.S. 702, 704

(1943)). Disguising oneself as a U.S. constable may be permissible in a different situation, but it was

not permissible here. To act as a federal officer at a courthouse, one need not go barging into

courtrooms or arresting people. It is enough to appear as an agent of the law. In sum, the record was

such that on each count a "rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991).

Quin Willis alone challenges the sufficiency of the evidence on the second element of the crime, knowledge of the falsity of the representation. He argues that he was completely under sway of Dock, the "chief constable," and that he really believed U.S. constables exist and that he was one. There is evidence in the record to support the jury's contrary view. Quin's brother Milton had previously been arrested outside the drug store after posing as a federal officer, and Quin had himself worked in corrections and private security. He was not ignorant of the way law enforcement works.

Finally, Dock argues that he is entitled to a new trial because the district court failed to inquire into his request for new counsel made after the close of proof. Perhaps the district court should have taken a few minutes out of the trial to ask Dock about his complaint, but the court had observed the trial and heard the evidence that Dock was inclined to play games with the legal system. The effect of the motion for new counsel was to seek a new trial. If Dock has good reason for believing he was ill served by his counsel, he may file a motion under § 2255 asserting ineffective assistance of counsel as a reason for requesting a new lawyer after the trial.

Accordingly, the judgment of the district court is affirmed.