In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-2061

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JEREMY C. WADE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 18-cr-00076 — **Pamela Pepper**, *Chief Judge.*

ARGUED APRIL 15, 2020 — DECIDED JUNE 26, 2020

Before MANION, HAMILTON, and BARRETT, *Circuit Judges.*

MANION, *Circuit Judge.* Jeremy Wade hoped to reacquaint himself with a girl he knew in high school so he could ask her for a date. Instead of simply giving her a call, Wade masqueraded as an agent of the Drug Enforcement Administration ("DEA") to persuade the object of his unrequited affection to go out with him. In doing so he violated 18 U.S.C. § 912, which prohibits impersonating a United States employee and acting in conformity with that pretense. Wade argued to the

district court that his alleged romantic motivation (as opposed to a nefarious intent to deceive or defraud) negated a culpable state of mind, but we have held intent to defraud is not a separate element of § 912. Accordingly, the district court prevented Wade from making this argument and refused to instruct the jury on intent to defraud. The jury found him guilty. We affirm the conviction.

## I.  Background

Wade twice pretended to be a DEA agent in January and February 2018. The first time he drove a white Cadillac SUV one early evening to the house of Nicole Bishop. Wade and Bishop had attended high school together and had a few friends in common, though they did not socialize then or thereafter. Bishop saw him approaching her house and noted he had a law enforcement badge around his neck and a holstered gun. Believing based on these details he was a law enforcement officer, she opened her door to him. Wade proceeded to pretend he was investigating a suspect named "Zach Light." After Bishop denied having any knowledge of Zach Light, Wade retrieved a mug shot of the alleged suspect from his car. Bishop confirmed again that she did not know the individual pictured. Wade then asked if she remembered him (Wade), and she said she did. He apparently left after this.

About a week later, Wade returned to Bishop's home and left a business card in her mailbox. This business card claimed Wade was a special agent of the DEA. It also listed two phone numbers and an email address made to look like an official Department of Justice address. Wade left the following handwritten message on the back of the card:

> I realized when I was here last week I didn't leave you any way to get a hold of me. So if something comes to mind about the guy I was looking for or most importantly, if you realize, "hey, it's time I let this guy take me out," all my info is on the front. Text any time!!

Bishop was not amused. She reported Wade's interactions to the police, who opened a stalking investigation. Officers invited Wade to the police station to make a statement, and Wade did so. During the interview, Wade was evasive regarding the identity of his employer.

Wade was indicted on two counts of impersonating a United States employee and acting as such in violation of 18 U.S.C. § 912. Before trial, the government filed a motion *in limine* to preclude Wade from arguing his romantic motivation negated his culpability. The government argued § 912 does not require proof of intent to defraud, referring to it as a "strict liability" offense. The government likened it to possession of a firearm by a felon, 18 U.S.C. § 922(g)(1), where the felon's motivation for possessing the firearm is irrelevant and evidence of motive is often precluded by courts. According to the government, Wade's arguments about his romantic motivation could only encourage jury nullification by causing the jury to conclude his actions, though illegal, were not serious or harmful. The judge agreed and granted the motion. Even so, during closing argument, defense counsel told the jury: "Although [Wade] might be a hopeless romantic, he's not a criminal."

The judge also ruled against Wade's proposed jury instructions that would have required the jury to find Wade acted "knowingly with intent to deceive or defraud," defined as "to act with the specific intent to try to get a person to do

something he would not otherwise have done." Wade proposed an alternative instruction requiring the jury to find beyond a reasonable doubt that he "by artifice or deceit, sought to cause the deceived person to follow some course he or she would not have pursued but for the deceitful conduct." The judge rejected this instruction as well. Instead, the court provided an instruction requiring the jury to find the following beyond a reasonable doubt:

1.  The defendant falsely assumed or pretended to be an officer or employee of the Drug Enforcement Administration, and

2.  As such officer or employee, the defendant committed some overt act involving an assertion of claimed authority derived from the office the defendant pretended to hold.

The jury convicted Wade on both counts after a brief trial. Wade appeals.

## II. Discussion

Wade challenges both the district court's jury instructions and the motion *in limine* ruling on the basis that intent to defraud is an essential element of § 912. Additionally, he argues the evidence was insufficient to support the jury's verdict on either count.

1.  Jury Instructions

We review *de novo* "whether the jury instructions accurately summarize the law, but give the district court substantial discretion to formulate the instructions provided that the instructions represent a complete and correct statement of the law." *United States v. Bonin*, 932 F.3d 523, 537–38 (7th Cir.

2019). The omission of an element from the jury instructions amounts to a violation of the defendant's Sixth Amendment right to a jury trial. *Neder v. United States*, 527 U.S. 1, 12 (1999). But such an omission is subject to harmless-error analysis. *Id.* at 9–10. If it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error," then the error does not warrant reversal. *Id.* at 18.

Section 912 has two clauses, prohibiting two kinds of conduct. *United States v. Rippee*, 961 F.2d 677, 678 (7th Cir. 1992). The first clause of the statute penalizes anyone who "falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or office thereof, and acts as such."[1] 18 U.S.C. § 912. This offense has two elements: (1) falsely impersonating a United States employee or officer, and (2) committing "an overt act in conformity with the pretense." *See Rippee*, 961 F.2d at 678.

Wade argues the offense requires submission of a third element to the jury: an intent to defraud or deceive. He builds his case from legislative history and the Supreme Court case *United States v. Lepowitch*, 318 U.S. 702 (1943). Prior to a 1948 revision, the offense of falsely impersonating a United States officer or employee explicitly required that the defendant acted "with intent to defraud either the United States or any person." *See United States v. Rosser*, 528 F.2d 652, 654 (D.C. Cir. 1976). In 1943, the Supreme Court held "the words 'intent to defraud,' in the context of this statute, do not require more

---

[1] The second clause prohibits "false impersonation of a federal official coupled with demanding or obtaining a thing of value." *Rippee*, 961 F.2d at 678. Wade was indicted under the acts-as-such clause, so the second clause is not at issue in this case.

than the defendants have, by artifice and deceit, sought to cause the deceived person to follow some course he would not have pursued but for the deceitful conduct." *Lepowitch*, 318 U.S. at 704. In 1948, Congress revised the statute to its present form, removing the "intent to defraud" language. The reviser's note simply stated "[t]he words 'with the intent to defraud the United States or any person' … were omitted as meaningless in view of [*United States v. Lepowitch*]."

In *Rosser*, the D.C. Circuit examined the effect of this revision and reconciled the competing notions that "Congress did not intend to increase the scope of" the statute by the 1948 revision, but "courts should be extremely hesitant to read back into the statutory definition of a crime words specifically excised by Congress." 528 F.2d at 656. The *Rosser* court concluded both concerns may be accommodated "[i]f acting 'as such' is understood to mean performing an overt act that asserts, implicitly or explicitly, authority that the impersonator claims to have by virtue of the office he pretends to hold." *Id.* "[I]t seems reasonable for Congress to have concluded that virtually everyone who pretends to be an officer or employee of the United States and in some manner asserts authority by acting 'as such' seeks 'to cause the deceived person to follow some course he would not have pursued but for the deceitful conduct.'" *Id.*

Wade points to *Rosser* and decisions of other circuits to argue the 1948 revision was not meant to remove intent to defraud as an element of the offense but simply recognized intent to defraud was inherent in the offense, making the language redundant. As an initial matter, Wade's reliance on *Rosser* is misplaced. The court in that case specifically referenced Congress's revision as the "elimination of intent to

defraud as an element of" the offense, noting that the elimination was consistent with *Lepowitch*. *Id. Rosser* also affirmed instructions by which "the jury was told that to find Rosser guilty it must find that he had falsely pretended to be an officer or employee of the United States and that he had 'committed some overt act as such employee,'" without any further instructions regarding intent to defraud or deceive. *Id.* at 658. The instructions in this case also identified those two elements and thus were substantially the same as those affirmed in *Rosser*.

More importantly, our precedent stands against Wade's position as well. In *United States v. Cord*, we held fraudulent intent is not an essential element of § 912. 654 F.2d 490, 492 (7th Cir. 1981). Citing *Rosser*'s analysis, we concluded it is "implicit in the remaining language … that the 'acts' … cause a victim to follow a path he would not otherwise have taken," so there is no need to separately allege or prove an intent to defraud or deceive. *Id.* Wade argues the issue in *Cord* was only whether fraudulent intent must be alleged in the indictment, not whether it must be submitted to the jury. But our reasoning in *Cord* was broader than the indictment context. We stated "[t]he code section was changed to eliminate the element of intent to defraud; this change cannot simply be ignored." *Id.*

We do, however, want to take care in delineating the difference between the proper scope of § 912 on the one hand and criminalizing mere boastful speech on the other. That difference is found in the second element of the offense: the acts-as-such element. In *United States v. Bonin*, we examined a First Amendment challenge to § 912's acts-as-such impersonation offense, and explained it is the requirement of an "intentional

action in the pretended character sought to cause the deceived person to follow some course he would not have pursued but for the deceitful conduct" that saves this offense from unconstitutionally abridging protected speech. 932 F.3d at 536 (quoting *Lepowitch*, 318 U.S. at 704) (internal markings omitted); *see also Rosser*, 528 F.2d at 657–58 ("[F]ocusing attention on the nature of the defendant's action should differentiate the mere braggart from the criminal."). Our cases applying § 912's acts-as-such clause have involved overt action taken to cause the victim to follow a course of action he would not have otherwise pursued. *See, e.g., Bonin*, 932 F.3d at 536 (defendant falsely pretended to be a U.S. Marshal to cause movie theater audience to tolerate his rude and threatening behavior and to prevent police officers from taking action against him); *United States v. Hamilton*, 276 F.2d 96, 97–98 (7th Cir. 1960) (defendant falsely told boarding house owner that he was a "Federal tax man" and FBI agent, influencing her to tolerate him carrying a gun openly in her house).

*Bonin*, *Cord*, and *Hamilton* affirm that the second element encompasses the defendant's overt act in the pretended character intended to cause the victim to take a course of action he or she would not otherwise pursue. This was the conclusion of *Rosser* as well, taking its cue from *Lepowitch*. But it does not require separate proof of a nefarious intent to defraud or deceive.

Wade's second proposed jury instruction tracked the language of *Lepowitch* and would have been helpful to direct the jury to the proper application and scope of § 912. The district court would have done well to use such language. But, as in *Bonin*, an intent to cause the victim to follow a course she otherwise would not pursue was inherent in the court's

instructions on the acts-as-such element. In fact, the instructions here were nearly identical to the instructions affirmed in *Bonin*, with the added instruction that the jury must find the overt act "involve[d] the assertion of authority."[2] As the D.C. Circuit held in *Rosser*, such an assertion of authority will virtually always involve a purpose to influence the victim to follow some course of action she otherwise would not have pursued. *Rosser*, 528 F.2d at 656. In fact, even under Wade's "hopeless romantic" theory of the case, he sought to cause Bishop (a single woman living alone) to open the door of her home to him (an armed man whom she did not know well), to engage and continue in conversation with him, to answer questions about a make-believe criminal suspect, to text or call him either with information related to the investigation or for romantic purposes, and, ultimately, to go out with him. Most, if not all, of these are things Bishop would have been unlikely to do absent Wade's pretense.

Accordingly, the district court did not err by not explicitly instructing the jury that it must conclude Wade intended to cause Bishop to follow a course of action she otherwise would not have pursued to find him guilty.

Intent to defraud aside, the first element of § 912 implicitly requires a *mens rea* element: the defendant's knowledge that

---

[2] We stated in *Bonin* that an "assertion of authority" instruction for a § 912 acts-as-such offense is unnecessary since the statutory language does not include this. 932 F.3d at 539. But where, as here, the jury *did* find the defendant's overt action involved an assertion of authority, there is little doubt the act also encompassed an attempt to influence the victim to follow a course of action she otherwise would not have pursued.

he is not truly an officer or employee of the United States.[3] *See Bonin*, 932 F.3d at 538–39. The district court concluded it was not necessary to separately instruct the jury on this scienter requirement because one cannot falsely pretend without knowing one's pretense is false. We held in *Bonin*, however, that failure to instruct on this *mens rea* element is an error, though it may be a harmless one. *Id.* Here, the error was indeed harmless. The record includes no evidence to support a finding that Wade did not know he was not a DEA agent, and Wade concedes he never argued this. Wade's alleged romantic intent does nothing to negate the scienter requirement, either, because his motivation has no bearing on whether he knew he was not a DEA agent.

Accordingly, we find no reversible error in the court's jury instructions.

---

[3] Throughout his written submissions and oral argument, Wade construed the district court's failure to instruct on intent to defraud as an elimination of any *mens rea* element and transformation of § 912 into a strict liability offense. Although it now accuses Wade of "conflating motivation with *mens rea*," the government muddied that water itself by referring to § 912 as a strict liability offense at the pre-trial conference in the district court. That was an incorrect and troubling representation, since the Supreme Court has instructed "the general rule is that a guilty mind is a necessary element in the indictment and proof of every crime," and courts should "generally interpret criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." *Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015) (internal markings omitted). However, it appears from the transcript that the parties and the court understood the government's argument to be that the defendant's underlying *motivation* was irrelevant to the offense elements, not that no *mens rea* was necessary at all. That argument, though improperly articulated, was correct.

2. Motion *In Limine*

We generally review decisions on motions *in limine* for abuse of discretion. *See Aldridge v. Forest River, Inc.*, 635 F.3d 870, 874 (7th Cir. 2011). Here, the district court granted the motion based on its determination that evidence of Wade's romantic intent was insufficient as a matter of law to establish a defense to § 912 and would instead invite jury nullification. "The legal sufficiency of a proffered defense is a question of law and therefore is reviewed *de novo*." *United States v. Santiago-Godinez*, 12 F.3d 722, 726 (7th Cir. 1993). We therefore review *de novo* the district court's legal conclusions underlying the grant of the motion, though we still review its ultimate decision to grant the motion for abuse of discretion.

As we have already explained, an intent to defraud or deceive is not a separate element of § 912. The district court did not err in concluding Wade's alleged romantic motivation was not relevant to whether he (1) knowingly falsely pretended to be a United States officer or employee and (2) engaged in an overt act sought to cause the victim to follow a course of action she otherwise would not have pursued. His motivation does not negate his knowledge that he was not, in fact, a DEA agent. It also has no bearing on whether he committed an overt act to cause Bishop to follow a course of action she would not otherwise pursue.

Wade argues his romantic motivation undermines any true assertion of authority, but this is a meritless argument as well. First, even though the district court instructed the jury it must find an overt act "involving an assertion of authority," we have held that no such instruction is required. *Bonin*, 932 F.3d at 539. The statute's language does not require an assertion of authority, and "acting as such" has been defined to

mean "acting in the pretended character, and not necessarily doing an act which defendant would have been authorized to do under the authority of the assumed capacity." *Hamilton*, 276 F.2d at 98. Furthermore, the evidence supports the conclusion that Wade did assert the authority of a DEA agent by taking actions in conformity with his pretended character. Wade represented to Bishop that he was investigating a suspect, showed her pictures of the fake suspect, and left a false DEA business card in her mailbox with instructions to call or text him if she remembered any information related to his purported investigation. The fact that he purportedly took such actions out of a misguided attempt to convince her to go out with him makes no difference.

Thus, the only effect the romantic-motivation argument could have had was to cause the jury to conclude Wade's crime was not all that serious or harmful, leading to jury nullification. This is precisely what the district court determined as well, which is why the argument was precluded. Although every jury has the *de facto* power of nullification due to the unreviewable nature of a judgment of acquittal, a defendant has no right to argue for the jury to disregard the law. *Gibbs v. VanNatta*, 329 F.3d 582, 584 (7th Cir. 2003). The district court's underlying legal conclusions were correct, and it did not abuse its discretion by granting the motion *in limine*.

3. Sufficiency of the Evidence

Wade raises one more argument on appeal, challenging the sufficiency of the evidence to convict him on either count. According to Wade, § 912's "acts as such" clause requires an overt act separate and distinguishable from the original pretense, whereas his actions were indistinguishable from the pretense itself or mere repetitions of the pretense.

When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the government and will overturn the jury's verdict "only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Torres-Chavez*, 744 F.3d 988, 993 (7th Cir. 2014).

Wade's argument fails to overcome the "nearly insurmountable" burden of proving that the evidence could not support the jury's finding of guilt. *Id.* The evidence was more than sufficient for the jury to find Wade guilty. During the first encounter, Wade went beyond merely asserting a pretense by wearing a badge and gun, interviewing Bishop about a fake investigation, and showing her a photograph of the pretend subject of his investigation. Regarding the second incident, Wade argues that leaving the business card cannot suffice for both elements of the offense (falsely pretending and acting as such), but he misstates the facts. By leaving the official-looking business card, Wade again falsely pretended to be a DEA agent (the card identified him as an agent and included an official-looking DOJ email address). He then went beyond this pretense by also leaving the handwritten note, which once again asked Bishop for information related to his fake investigation and prompted her to contact him. Thus, both elements of the offense were present in both counts, and the evidence viewed in the light most favorable to the government supports the jury's verdict.

### III. Conclusion

Wade argues he is "a hopeless romantic," not a criminal. Those roles need not be mutually exclusive, however. Regardless of his alleged motivation for doing so, Wade violated

§ 912 by falsely pretending to be a United States employee and acting as such. Accordingly, we AFFIRM.