NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0116n.06

Case No. 23-3819

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Mar 12, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) | |
| LOGAN DANIEL MALIK, | ) | |
|     Defendant-Appellant, | ) | OPINION |
|  | ) | |

Before: KETHLEDGE, READLER, and BLOOMEKATZ, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Logan Malik was a police officer. But he held himself out to multiple individuals and businesses as a U.S. Marshal with the "fugitive task force." That representation was untrue. Eventually, a jury convicted him of impersonating a federal officer. Finding sufficient evidence to support the conviction, we now affirm.

I.

According to 911 callers, Malik, who worked in local law enforcement, approached multiple individuals over the course of an evening purporting to be a federal agent. The first incident occurred at a Macy's jewelry counter. Malik told a store employee that he was part of a fugitive task force and was looking for four or five bald men with tattoos on the backs of their heads, whom he referred to as "skinheads." According to the employee, Malik appeared "jittery" and "shaky," lacking "the nerves of steel" she would expect of a member of the fugitive task force. And Malik's appearance—a white polo shirt, jeans, and a local police department badge—did not

strike the employee as "proper" attire for a federal officer. As she spoke with Malik, the employee became fearful. She also observed shoppers within earshot leaving the store.

The employee notified her manager. When the manager joined the conversation, Malik was "shaking" and appeared "anxious." Malik repeated his story. He was a U.S. Marshal looking for five fugitives wanted on drug charges. Malik could not produce any identification but he wrote down his name and phone number.

Next, Malik went to a nearby Holiday Inn. Speaking to the front-desk manager, he identified himself as "U.S. Marshal Malik," and asked whether the manager "would recognize a skinhead if [she] saw one." Malik's "hands were kind of shaky." He had a gun. He wore a polo shirt as well as a badge, one that did not reference the Marshals Service. Malik instructed the manager to "call him directly" if she "saw any skinheads." Rather than providing a business card, Malik wrote down his name, purported division, and a phone number. By then, it was clear to the manager that Malik "wasn't actually a marshal," and that she "wanted to get him out" because she felt "uncomfortable." When Malik left, the manager called 911 to report the incident.

Malik's final stop was at a nearby Sheetz gas station. There, he approached a group of teenagers sitting in a parked car. He showed them his badge and stated that "he was a U.S. Marshal." He told the teens about "modern-day Nazis" who had been arrested at the mall, describing the "tattoos on their necks." He advised the teenagers to call him if they saw the individuals but he did not provide a phone number. A short while later, one of the teenagers proceeded to call 911.

Officers responded to the call. They observed Malik wearing a police vest and standing near a vehicle. Malik entered the vehicle and began driving out of the parking lot. The officers initiated a traffic stop. They frisked Malik, discovering two police badges and a firearm. The

officers next verified Malik's driver's license information, confirming that he was employed by a local police department. The officers then questioned him, at which point he consented to a search of his vehicle. Inside, officers discovered a baton, a pair of handcuffs, and a taser.

At trial, the Macy's employee and manager, the Holiday Inn manager, one of the teenagers, and two of the arresting officers testified to these interactions. Two witnesses affiliated with the U.S. Marshals Service also testified. The first, Officer Riddle, was a local officer who had been designated as a "special deputy" of the Marshals Service and participated in the Service's fugitive task force. He confirmed that Malik had never been employed as a U.S. Marshal. He explained that, in his current federal position, he typically wears clothing that indicates that he is a member of the task force, and that he carries credentials identifying him as a Special Deputy U.S. Marshal. And he indicated that as he took Malik into federal custody after his initial arrest by local officers, Malik "asked a lot" of questions about the task force. To Riddle's mind, Malik seemed to be seeking information "to use . . . for future impersonations."

The second Marshals Service-affiliated witness was a private contractor who helped process Malik after his federal arrest. As he did, the contractor explained to Malik that he was not a Deputy Marshal, and instead was a contractor for the Service. To that, Malik retorted: "I should have said that."

After a two-day trial, a jury unanimously convicted Malik of one count of impersonating a U.S. Marshal, in violation of 18 U.S.C. § 912 (Officer or employee of the United States). The district court sentenced him to 30 days in prison, followed by a year of supervised release. This timely appeal followed.

II.

A.  Malik challenges the sufficiency of the evidence supporting his conviction under 18 U.S.C. § 912, which makes it a crime to "falsely assume[] or pretend[] to be an officer or employee acting under the authority of the United States . . . and act[] as such."  In light of the jury's verdict against him, Malik faces a "high bar."  *United States v. Wellman,* 26 F.4th 339, 347 (6th Cir. 2022) (quotation omitted).  On appeal, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Maya*, 966 F.3d 493, 498 (6th Cir. 2020) (quoting *Musacchio v. United States*, 577 U.S. 237, 243 (2016)).  Put another way, Malik's conviction must stand unless "the government's case was so lacking that it should not have even been submitted to the jury."  *Musacchio*, 577 U.S. at 243 (quoting *Burks v. United States*, 437 U.S. 1, 16 (1978)).

To convict Malik under § 912, the government had to prove four elements:  that Malik (1) "was not an officer/employee of the United States"; (2) "pretended to be an officer of the United States"; (3) "acted as an officer of the United States"; and (4) "committed these acts knowingly."  Lexis, 2 Modern Federal Jury Instruction 34.01 (2023).  Malik contests only the third—that he "acted as" a U.S. Marshal.

What must the government show to satisfy that element?  The answer may depend upon whom you ask.  We have previously held, albeit in unpublished cases, that the statute's "acts-as-such" clause criminalizes false impersonation of a federal officer "coupled with an overt act in conformity with" the impersonation.  *United States v. Peatross*, 377 F. App'x 477, 480 (6th Cir. 2010); *see United States v. Willis*, 527 F. App'x 376, 378 (6th Cir. 2013) ("overt act consistent with the assumed or pretended character").  A sister circuit, however, has suggested that other

4

conduct would suffice. The Seventh Circuit recognizes that a defendant satisfies the acts-as-such clause when she seeks "to cause the deceived person to follow some course of action he would not have pursued." *United States v. Wade*, 962 F.3d 1004, 1010 (7th Cir. 2020). The district court seems to have taken this view a step further, holding that the government had to prove that Malik "took an act seeking others to change their course of conduct in some way believing that [he] was, in fact, associated with the U.S. Marshal Service." Still, the district court denied Malik's motion for acquittal under Federal Rule of Criminal Procedure 29, finding that the government introduced sufficient evidence to submit the matter to the jury.

Viewed through either lens, the jury heard sufficient evidence to convict Malik. Start with the overt act requirement from our earlier cases. Malik identified himself as a U.S. Marshal and/or a member of a federal fugitive task force to at least four others. He instructed at least two of them to call him (rather than 911) in furtherance of an investigation of fugitives. And he specifically identified purported suspects. These assertions fairly constituted at least one "overt act" consistent with Malik's pretense as a U.S. Marshal. *See Willis*, 527 F. App'x at 378.

Were we to impose an intent to deceive requirement for the offense's "acts-as-such" element, there was still sufficient evidence to convict. A reasonable juror could have easily concluded that Malik sought to cause others to alter their conduct. This is not a high burden, given the nature of the offense. After all, falsely impersonating a federal officer "virtually always involve[s] a purpose to influence the victim to follow some course of action she otherwise would not have pursued." *Wade*, 962 F.3d at 1010. Here, a reasonable juror could have easily concluded as much, as the impacted individuals testified that they changed their conduct due to Malik's ruse. For example, the Holiday Inn manager testified that she engaged in conversation with Malik for longer than she otherwise would have based on his claim that he was a U.S. Marshal. *See* R. 64 at

PageID 423 ("Q: So would you say your conversation with the defendant that day was prolonged because of his statement to you that he was, in fact, the Marshal? A: Yes. Yes, sir."). It is not difficult to view Malik as having intended to induce individuals outside of his own police jurisdiction to engage with him or otherwise alter their actions due to his misrepresentations.

Resisting this conclusion, Malik emphasizes that he did not "attempt to effectuate an arrest," "engage in a pursuit," "obtain access to a law enforcement restricted area or item," or "seek to obtain any benefit from his actions." Perhaps so. But we have never limited a qualifying overt act to those specific actions. Rather, deceptive conduct suffices so long as it reflects "enough" for the defendant "to appear as an agent of the law." *See Willis*, 527 F. App'x at 378 (interpreting the acts-as-such element of § 912 and observing that "[t]o act as a federal officer at a courthouse, one need not go barging into courtrooms or arresting people"). It also bears reminding that, in evaluating the record in a light favorable to the government, our focus is on the evidence the government did present, not hypothetical evidence it did not. *See United States v. Garcia*, 758 F.3d 714, 722 (6th Cir. 2014) ("To conclude otherwise is an invitation to examine whether the Government might have presented a more convincing case, not whether it in fact presented a sufficient one.").

Next, Malik, again on the back of out-of-circuit precedent, reads § 912 to require the government to demonstrate that "the impersonator act with fraudulent intent." *United States v. Tullos*, 356 F. App'x 727, 728 (5th Cir. 2009). And, he adds, he "did not have any self-serving interest" nor "intent to harm any[one]." Whatever value *Tullos* has in this circuit, it offers no help to Malik. *Tullos* defines "fraudulent intent" as "intent to deceive another to act differently than he would have acted absent the deception." 356 F. App'x at 728. To our eye, this "fraudulent intent" requirement largely mirrors the district court's already-discussed standard for the "acts-as-such"

6

clause. And, again, the record amply supports Malik's conviction under that framework. *See supra* 5–6. It may be, as Malik suggests, that his "only intent . . . was to possibly assist in the capture of dangerous individuals." But because his actions were "consistent with the assumed" character of a U.S. Marshal and "sought" for others to change their conduct in light of his deception, they amounted to a statutory violation. *See Willis*, 527 F. App'x at 378.

Malik also takes issue with the jury's failure to credit mitigating facts. True, as Malik notes, he displayed his police department badge and wore a vest that said "police" (not "U.S. Marshal"). That same evidence was before the jury, which nonetheless convicted him of violating § 912. We are careful not to "substitute our judgment for that of the jury," the body charged with "weigh[ing] the evidence [and] consider[ing] the credibility of witnesses." *United States v. Glover*, 265 F.3d 337, 341 (6th Cir. 2001). As a rational juror could have found the essential elements of the crime beyond a reasonable doubt, the conviction stands. *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

B. Malik also raises a First Amendment challenge, albeit somewhat obliquely. In a nutshell, he appears to contend that he is being prosecuted for nothing more than constitutionally protected speech. As he failed to raise this point with the district court, we review for plain error. *See United States v. Tellez*, 86 F.4th 1148, 1153 (6th Cir. 2023).

Malik's argument suffers from multiple flaws. One, we have previously rejected the general point he makes today. "[I]mpersonating the police," we have noted, "is not protected speech." *Novak v. City of Parma*, 33 F.4th 296, 305 (6th Cir. 2022) (first citing *United States v. Alvarez*, 567 U.S. 709, 721 (2012) (plurality op.); then citing *id.* at 735 (Breyer, J., concurring); and then citing *id.* at 748 (Alito, J., dissenting)). Two, the Supreme Court, for its part, has largely foreclosed the specific challenge Malik makes to his prosecution under § 912.

Consider *Alvarez*. There, the Supreme Court held that the Stolen Valor Act of 2005, which prohibited individuals from falsely claiming that they won the Congressional Medal of Honor, violated the First Amendment. 567 U.S. at 715–16, 729–30. In so holding, the Supreme Court referenced other statutes that work in a similar fashion but do not appear to have First Amendment faults—including § 912 as well as 18 U.S.C. § 709, which criminalizes false advertising or misuse of names to indicate a federal agency. *Id.* at 720–21; *id.* at 735 (Breyer, J., concurring); *id.* at 748 (Alito, J., dissenting). These statutes do not regulate "pure speech" for speech's sake but instead "implicate fraud or speech integral to criminal conduct." *Id.* at 717, 720–21. And the criminal conduct at issue is not the falsity of the statement but debasing the "integrity of Government processes." *Id.* That describes today's case, where Malik's conduct essential to the crime of conviction was speech identifying himself, falsely, as a U.S. Marshal. His prosecution, therefore, is not at odds with the First Amendment's robust protections on speech.

\*  \*  \*  \*  \*

The judgment is affirmed.